907 A.2d 519

Henrietta BEATTIE, Gertrude Ellis, Karen Rummel, Sandra Walls, Kenneth Pierce, and Mon Valley Unemployed Committee, on their own Behalf and on Behalf of all others Similarly Situated, Appellants

v.

ALLEGHENY COUNTY, Pennsylvania, Daniel Onorato, Its Chief Executive and Manatron, Inc., Appellees.

Supreme Court of Pennsylvania.

Argued Sept. 12, 2005.

Decided Oct. 11, 2006.

114

---

Kevin Quisenberry, Pittsburgh, for Henrietta Beattie, et al.

Michael Henry Wojcik, George M. Janocsko, Pittsburgh, for Allegheny County, et al.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice SAYLOR.

This appeal raises the question of whether taxpayers may bypass administrative remedies and maintain an equitable class action in the trial court to assert a Uniformity Clause-based challenge to the real estate assessment system used by Allegheny County.

### I.

Appellants filed a class-action equitable complaint in the Court of Common Pleas of Allegheny County, alleging that their properties had been over-assessed by the County, and stating more generally that the County's assessment system caused approximately 80,000 lower-valued homes to be over-assessed and resulted in an under-assessment of a significant number of higher-valued homes. In challenging the constitutionality of the assessment under the Uniformity Clause, *see* PA. CONST. art. VIII, § 1 ("All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."), Appellants asserted that the County failed to follow its own mass appraisal standards, as set forth in the County's Assessment Standards and Practices Ordinance (the "Assessment Ordinance"). They also advanced a claim under Section 1983 of the federal Civil Rights Act of 1871, 42 U.S.C. § 1983, *see generally Kowenhoven v. Allegheny County*, 587 Pa. 545, 551–52 n. 4, 901 A.2d 1003, 1006–07 n. 4 (2006), based upon these same factual allegations.

According to the Complaint, the County carried out consecutive county-wide property reassessments for tax years 2001 and 2002, employing a Computer Assisted Mass Appraisal ("CAMA") system to produce the assessments.[1] However, the

---

1. The original action was filed June 1, 2001, and pertained only to tax year 2001. In March 2002, Appellants filed their second amended

valuation models designed by the County for use in the CAMA system contained certain features that Appellants alleged to be systemic flaws, including the exclusion of property sales for less than $10,000, disproportionate weight assigned to quantitative factors such as a home's square footage and number of bedrooms, and the dividing of the County into approximately 1,800 neighborhoods. Appellants asserted that the Assessment Ordinance, enacted in December 2001, requires that the Chief Assessment Officer certify, *inter alia,* that the yearly mass assessments produce price-related differentials ("PRDs") no greater than 1.03 on a county-wide basis, and that, although this certification was made, the assessments did not, in fact, comply with this requirement.[2] Appellants additionally asserted that, while individual appeals from the yearly reassessments may be able to reduce an over-assessed property's valuation, because tax charges are the product of the assessment and millage, and millage is based upon the total assessed value of all properties in the county, "the under assessment of a substantial proportion of homes will cause lower valued homeowners to be overcharged for taxes even if their individual assessments [are] corrected." Complaint at ¶ 53; RR. 25a. In their prayer for relief, Appellants requested that the common pleas court, *inter alia,* enter an order which

complaint—the one presently at issue (the "Complaint")—challenging the county-wide reappraisals for tax years 2001 and 2002. The Complaint named as defendants the County, its chief executive (initially James Roddey, now Daniel Onorato), and Manatron, Inc., a private company that supplied mass appraisal services to the County during the relevant time frame. By agreement of the parties, all claims against Manatron were dismissed; additionally, the County's chief executive was dismissed from the case, leaving the County as the sole remaining defendant.

2. According to the Assessment Ordinance, the PRD is the mean ratio of sales to assessed values in the jurisdiction, divided by the weighted mean, *i.e.,* an average in which each individual value is adjusted according to its relative importance to the whole. PRDs above 1.03 tend to indicate assessment regressivity (an appraisal bias in which high-value properties are appraised lower than low-value properties relative to their actual value), while PRDs below 0.98 indicate tax progressivity (an appraisal bias in which high-value properties are appraised higher than low-value properties relative to their actual value). *See* Assessment Ordinance § 101.03 ("Definitions").

requires that Allegheny County utilize that data which it has properly collected, supplement this data as necessary, reassess their properties as required for the purposes of tax rate correction, and notify plaintiffs of the individual relief which this produces.

RR. 27a.

The County filed preliminary objections, arguing that Appellants could challenge their assessments initially through a statutory appeal to the Board of Property Assessment Appeals and Review (the "Appeals Board"), and appeal any adverse decision to the common pleas court for a *de novo* hearing. In the County's view, this would constitute an adequate remedy at law so as to preclude injunctive and declaratory relief on the Complaint. The County also included an objection to all counts, alleging that the specificity of the allegations in the Complaint was insufficient to allow the County to determine accurately the particular bases or theories on which Appellants were seeking recovery. *See* RR. 42a; Pa.R.C.P. 1028(a)(3) (permitting preliminary objections based on insufficient specificity in a pleading).

By opinion and order dated March 27, 2003, the trial court dismissed the complaint, finding initially that Appellants could not pursue their Section 1983 claim because there was an adequate remedy under state law, namely, the administrative process referenced by the County for challenging tax assessments under the General County Assessment Law and the Second Class County Assessment Law. *See Jordan v. Fayette County Bd. of Assessment Appeals,* 782 A.2d 642 (Pa.Cmwlth. 2001); *Murtagh v. County of Berks,* 715 A.2d 548 (Pa.Cmwlth. 1998). For similar reasons, the trial court found that Appellants could not circumvent this process to present their uniformity challenge in the court's equitable jurisdiction. In reaching this conclusion, the trial court initially noted that Appellants had failed to allege that the assessment system was deliberately operated to produce inequities or that any subclass of properties was consciously singled out for disparate treatment; to the contrary, the Complaint acknowledged that the system was designed to treat all properties in a similar

fashion, but asserted that it had not done so. The court also faulted the Complaint for its lack of specificity:

> While the prayer for relief seeks an order which requires Allegheny County to "utilize that data which it has properly collected," the complaint does not describe the manner in which the County failed to utilize the data which it properly collected. While the prayer for relief seeks an order directing the County to "supplement this data as necessary," the complaint does not describe the manner in which this should occur. While the prayer for relief seeks an order requiring the County to "reassess their properties as required for purposes of tax rate co[rr]ection," there is no specific correction that plaintiffs propose. What plaintiffs appear to be seeking is a court order directing the County to modify its system of assessing property until the alleged pattern of overassessment of properties under $50,000 is corrected.

Trial Court op. at 26 (alteration added). The court concluded by noting:

> The relief plaintiffs seek—an order requiring Allegheny County to utilize that data which it has collected, supplement this data as necessary, and reassess plaintiffs' properties as required for the purpose of tax collection—asks this court to assume responsibility for the operation of the assessment system until the deviations between assessed values and fair market values for all groups of property are similar.
>
> This is not an appropriate role for the court. Case law holds that the appeals process must be pursued where the county is operating a viable assessment system; courts should become involved in the county's operation of its assessment system only as a last resort.

*Id.* at 28–29.

A divided, *en banc* panel of the Commonwealth Court affirmed in a published decision. *See Beattie v. Allegheny County,* 847 A.2d at 185 (Pa.Cmwlth.2004). Initially, the majority recited the general rule requiring aggrieved parties to exhaust administrative remedies before seeking judicial

review, noting that failure to comply with this prerequisite tends to interrupt the administrative process which, in turn, restricts the agency's opportunity to develop an adequate factual record, limits the agency in the exercise of its expertise, and impedes the development of a cohesive body of law in the relevant area. *Id.* at 189 (citing, *inter alia, Jordan* 782 A.2d at 646; *Shenango Valley Osteopathic Hosp. v. Department of Health,* 499 Pa. 39, 47, 451 A.2d 434, 438 (1982)). In analyzing the decisional law concerning the rule's application, the majority noted that an exception has been made where taxpayers are advancing a "frontal attack on the underlying taxing statute" that raises substantial constitutional issues. *Id.* at 189 (citing *Borough of Green Tree v. Board of Prop. Assessments, Appeals & Review of Allegheny County,* 459 Pa. 268, 328 A.2d 819 (1974)). The majority observed that, in rare cases, an exception to the exhaustion rule has also been recognized where "the balance between an administrative agency's exercise of its expertise and its ability to offer complete redress for an alleged wrong of egregious constitutional dimension falls in favor of proceeding in equity" in the trial court. *Id.*

In this regard, the Commonwealth Court majority indicated that, for example, where a county singles out a certain geographical subset of its territory for mass reassessment at present values, leaving the remainder of the county assessed at values from prior years, a trial court may declare that the county has begun a de facto county-wide reassessment and enjoin collection of taxes at the new levels until the entire county is reassessed.[3] The majority disagreed, however, with

---

3. *See* 72 P.S. § 5020–402(a) (precluding political subdivisions from levying real estate taxes on a county-wide revised assessment until it has been completed); *City of Lancaster v. Lancaster County,* 143 Pa. Cmwlth. 476, 498, 599 A.2d 289, 300 (1991) (de facto county-wide reassessment found where ten taxing districts out of sixty were singled out for reassessment at present values, and the last county-wide reassessment was over twenty years earlier); *City of Harrisburg v. Dauphin County Bd. of Assessment Appeals,* 677 A.2d 350, 354 (Pa.Cmwlth.1996) (same, where remodeled or rehabilitated properties only in Harrisburg were reassessed at present-year values and last county-wide reassessment was ten years earlier); *cf. Millcreek Township v. County of Erie,* 714 A.2d 1095 (Pa.Cmwlth.1998) (where last county-wide reassessment

the trial court's suggestion that the present case is distinguishable from cases such as *City of Lancaster* and *City of Harrisburg* on the basis that, here, the County did not consciously target a specific set of properties (i.e., lower valued homes) for discriminatory treatment. The majority pointed out that, under *Fisher Controls Co. v. Commonwealth*, 476 Pa. 119, 127, 381 A.2d 1253, 1257 (1977), improper discrimination can be shown even absent purposeful misconduct by demonstrating that the challenged system adversely affects a subclassification of properties as part of a systematic method of enforcement of the tax laws, as opposed to mere errors or oversights. *See Beattie*, 847 A.2d at 190, 191. Thus, the Commonwealth Court majority stated that, if such a discriminatory effect exists from the systematic application of the County's mass appraisal system, the adequacy of the statutory remedy provided to taxpayers must be evaluated, for if it is inadequate the trial court may be permitted to exercise its equity jurisdiction.

In undertaking such inquiry, the court initially recognized that Appellants' complaint was not centered on a contention that there were inequities in the assessment-to-value ratios applied to the lower value homes as compared to the higher-value properties (indeed, all were assessed at 100% of value per the County's yearly mass reassessments), but that the less expensive homes' values were more likely to have been overstated in the first instance due to alleged deficiencies in the CAMA system's operation. The court noted in particular Appellants' allegation, recited above, concerning the need for a reduction of the millage applicable to their homes premised upon a wide-ranging increase in the valuations of properties at

was twenty-five years ago, county lacked uniform standards for valuation or uniform procedures for assessors, current tax scheme was replete with inequities, and it was impossible to achieve uniformity absent a full county-wide reassessment, mandamus action lay to compel county to immediately begin such reassessment). *But see Jordan*, 782 A.2d at 646 (requiring exhaustion of administrative remedies relative to a class action claiming that properties in the county purchased or improved since the mid–1970s were subject to a discriminatory assessment method as compared to other properties, as such allegations only challenged the application of the taxing statute and not its facial validity).

the high end of the spectrum. However, even accepting *arguendo* that the CAMA system negatively affected the group of lower value homes in the asserted class, the majority ultimately affirmed the trial court's dismissal of the Complaint, reasoning that

> while a taxpayer may not challenge the taxing authority's assessment of another property owner's under-assessment, [Appellants] have not asserted that they may not request the [Appeals Board] to recalculate the millage for the purpose of applying an accurate millage solely to their appeals. This brings us back to the point of *Borough of Green Tree*—that those agencies that have expertise in a particular area should be left to exercise that expertise in evaluating claims of this kind. . . . [A]ccordingly, we are not persuaded that the statutory appeal process is inadequate.

*Id.* Thus, the majority concluded that the administrative appeals process was adequate to address Appellants' contentions.[4]

Judge Pellegrini concurred in the result. Judge Friedman issued a concurring and dissenting opinion, agreeing with the dismissal of Appellants' Section 1983 cause of action, but disagreeing with the determination that Appellants have an adequate remedy through the statutory appeals process. On this latter point, Judge Friedman cited to her dissenting opinion in *Kowenhoven v. County of Allegheny*, 847 A.2d 172, 176 (Pa.Cmwlth.2004) (Friedman, J., concurring and dissenting), *rev'd*, 587 Pa. 545, 901 A.2d 1003 (2006).

## II.

■ In tax assessment appeals, this Court considers whether the trial court abused its discretion, committed an error of law, or reached a decision not supported by substantial evidence. *Lincoln Phila. Realty Assocs. I v. Board of Revision*

---

4. The Commonwealth Court also affirmed the dismissal of the Section 1983 claim and the cause of action premised upon the Assessment Ordinance. These claims are not presently before this Court because, in their Petition for Allowance of Appeal, Appellants limited their request for review to the single question of whether the trial court should have exercised its equity jurisdiction to entertain the Complaint.

*of Taxes of City and County of Phila.,* 563 Pa. 189, 205 n. 11, 758 A.2d 1178, 1187 n. 11 (2000); *Wilson Area Sch. Dist. v. Easton Hosp.,* 561 Pa. 1, 5 n. 5, 747 A.2d 877, 879 n. 5 (2000).

Presently, Appellants emphasize what was implicit in the Commonwealth Court's opinion, namely, that equity jurisdiction is precluded unless a two-part test is satisfied: the taxpayers must (1) raise a substantial constitutional issue, and (2) lack an adequate remedy through the administrative appeal process. *See Borough of Green Tree,* 459 Pa. at 274, 328 A.2d at 822 ("[W]hat is required to confer jurisdiction on an equity court is the existence of a substantial question of constitutionality (and not a mere allegation) *and* the absence of an adequate statutory remedy." (emphasis in original) (quoting *Rochester & Pittsburgh Coal Co. v. Indiana County Bd. of Assessment & Revision of Taxes,* 438 Pa. 506, 508, 266 A.2d 78, 79 (1970))); *Kowenhoven,* 587 Pa. at 559 n. 8, 901 A.2d at 1012 n. 8. Appellants argue that they have satisfied both prongs.

First, they maintain that their allegation concerning lower value properties having been systematically over-assessed in 2001 and 2002 raises a substantial constitutional issue under the Uniformity Clause and the Equal Protection Clause of the United States Constitution. *See* U.S. CONST. amend. XIV, § 1. Additionally, they aver that the Appeals Board's internal regulations prevent it from considering—in the context of a grievance concerning the assessment of a low value parcel—data pertaining to alleged under-valuation of higher-value properties. They also argue that the Appeals Board lacks the power to provide a full and complete remedy in the present situation because, contrary to the Commonwealth Court's suggestion, the board simply lacks the power to adjust millage rates even if it can reduce the assessment of individual low-valued properties. Finally, Appellants urge that requiring exhaustion in the present matter would lead to a large number of duplicative appeals all raising the same issue; they emphasize that low-income members of the class lack the financial means to follow through with the thousands of *de novo* appeals

to the trial court that they claim would be required to correct the situation completely.

The County responds by denying that either prong of the *Borough of Green Tree / Rochester Coal* test is met. It contends that this Court has only recognized the existence of a substantial constitutional issue where the taxpayers challenge the taxing statute on its face; it argues, more specifically, that this Court, unlike the Commonwealth Court, has never extended the exception to the exhaustion requirement beyond such a scenario to include claims based upon discriminatory effects occasioned by the *application* of the tax statute. The County also points to at least two Commonwealth Court decisions that adhere to this understanding of the term "substantial constitutional issue" in this context. *See Jordan*, 782 A.2d at 646 (interpreting *Borough of Green Tree* and *Rochester Coal* as holding that, absent "a substantial 'frontal attack' on the constitutionality of the tax statute," no substantial constitutional issue exists for purposes of the first prong of the test); *Consolidated Gas Supply v. County of Clinton*, 80 Pa.Cmwlth. 10, 13, 470 A.2d 1113, 1114–15 (1984) (finding no substantial constitution issue where the taxpayer did not challenge the tax statute on its face, but rather, challenged its application). Accordingly, the County urges this Court not to expand the exception beyond facial inquiries, so that an "as-applied" challenge will always fall outside of the exception's scope—except perhaps in the most extreme of cases such as a total abdication of reassessment responsibilities or a "half-hearted attempt to fulfill this obligation by performing a partial countywide reassessment that targets certain properties." Brief for Appellees at 24–25 n. 13.

Moreover, the County asserts that Appellants have an adequate administrative forum in which to raise their contentions about the 2001 and 2002 reassessments, arguing that the Appeals Board is capable of adjudicating their claims and that, to the extent that body commits error, the same can be rectified through a *de novo* appeal to the court of common pleas and subsequent appellate review in the ordinary course. *See id.* at 32–33 ("Like its counterparts in other counties in

this Commonwealth, the assessment appeals process established by the combination of the Allegheny County Administrative Code and applicable statutes provides ample latitude to raise, challenge and thoughtfully dispose of any conceivable complaint, issue or objection about a tax assessment."). The County takes issue with Appellants' assertion that they would be severely limited in the evidence they could present concerning alleged systemic over—or under-assessments, and points to this Court's pronouncements in *Deitch Co. v. Board of Prop. Assessment, Appeals & Review of Allegheny County*, 417 Pa. 213, 209 A.2d 397 (1965), and *McKnight Shopping Ctr. v. Board of Prop. Assessment, Appeals & Review of Allegheny County*, 417 Pa. 234, 209 A.2d 389 (1965), to the effect that any relevant evidence may be introduced in uniformity-based assessment grievances to assist in establishing the proper value at which a parcel should be assessed, in order to achieve equalization with other comparable properties.

## III.

A central principle articulated by the plurality in *Borough of Green Tree* was that the Legislature retains the power to channel all issues, including constitutional ones, into a specified route of appeal, such as an administrative appeal before a state or local agency. *See Borough of Green Tree*, 459 Pa. at 277, 328 A.2d at 823; *Kowenhoven*, 587 Pa. at 557, 901 A.2d at 1010. Relying on prior cases, however, this Court recognized an exception for certain types of constitutional questions that the administrative process was ill-suited to resolve.[5] In drawing the contours of this exception, the *Borough of Green Tree* plurality observed that bypassing the agency process within the framework of a direct attack on the enabling statute is inherently less likely to do violence to the agency's role as

---

5. This exception has at times been couched in terms of whether the trial court has equity jurisdiction to entertain the complaint. We have clarified, however, that the requirement of administrative exhaustion is a judge-made rule and does not pertain to the *existence* of subject matter jurisdiction, but to whether such jurisdiction is properly exercised. *See Shenango Valley Osteopathic Hosp.*, 499 Pa. at 46 n. 7, 451 A.2d at 437 n. 7.

fact-finder and applier of specialized expertise than in the context of an "as-applied" challenge. *Borough of Green Tree,* 459 Pa. at 281, 328 A.2d at 825.

After *Borough of Green Tree,* the Commonwealth Court permitted the exercise of equity jurisdiction in at least two cases where the assessment office undertook to reassess only a geographical subset of the county, *see City of Lancaster,* 143 Pa.Cmwlth. at 498, 599 A.2d at 300; *City of Harrisburg,* 677 A.2d at 354, and, in two additional matters, permitted the trial court to order a county-wide reassessment where the county's existing valuations were decades old and widespread, excessive non-uniformity had developed over time—a condition which could not be redressed either through individual appeals or through reassessment in only certain districts. *See Millcreek Township,* 714 A.2d at 1109; *Ackerman v. Carbon County,* 703 A.2d 82, 88–89 (Pa.Cmwlth.1997). The County correctly notes that these decisions are distinguishable from the present dispute in that, here, no particular group of taxpayers has been singled out for disparate treatment, and the property values about which Appellants complain are "not the product of some old and stale countywide assessment, but rather [are] the result of a recently conducted countywide assessment designed to treat all properties in the same fashion." Brief for Appellees at 23. In contrast to *Millcreek Township* and *Ackerman,* moreover, Appellants' complaint centers on certain alleged inadequacies in the manner in which the mass reassessment was carried out, principally, the alleged exclusion of data concerning property transfers for very small sums of money, the alleged improper division of the County into neighborhoods, and the alleged inappropriate emphasis on considerations such as square footage and number of bedrooms.

■ Still, it cannot be denied that Appellants' central contention is that they and thousands of similarly-situated low-value property owners have been subject to mass reassessments for 2001 and 2002 that (perhaps unintentionally) cause one subclass of property owners to be treated in an inferior manner as compared to another subclass. *See Allegheny*

*County v. Monzo,* 509 Pa. 26, 41, 500 A.2d 1096, 1104 (1985) ("[W]here a method or formula of computing a tax will, in its operation or effect, produce ... unreasonably discriminatory results, the constitutional provision relating to uniformity is violated."). Assuming the truth of this allegation, which we must in reviewing preliminary objections, *see AM/PM Franchise Ass'n v. Atlantic Richfield Co.,* 526 Pa. 110, 121, 584 A.2d 915, 921 (1990), Appellants are correct that many duplicative assessment grievances may be filed, all raising the same issue. This implicates the admonition that, "where relying solely on the statutory appeal mechanism would result in a 'multiplicity of duplicative lawsuits and, in contrast, an action in equity would provide a tidy global resolution,' the legal remedy should be deemed inadequate." *Kowenhoven,* 587 Pa. at 553, 901 A.2d at 1008 (quoting *Pentlong Corp. v. GLS Capital, Inc.,* 573 Pa. 34, 43–44, 820 A.2d 1240, 1245–46 (2003)). Moreover, while an appeal before the Board may be capable of lowering the assessment on any individual appellant's property, it does not appear that any systematic under-assessment of higher-value properties can be cured through a series of administrative appeals taken by members of the asserted class of lower-value property owners. Therefore, even if all low-value property owners have their valuations reduced to more accurate figures, the alleged discriminatory effect, though lessened, would remain.[6]

This still leaves the question of whether a substantial constitutional issue has been raised. *See Shenango Valley Osteopathic Hosp.,* 499 Pa. at 48, 451 A.2d at 438 (reciting that both an inadequate statutory remedy *and* a substantial constitutional issue are necessary for equity). On this topic, there is some merit to the County's argument that this Court has not historically recognized the existence of such an issue apart

**6.** The proper standard for demonstrating a uniformity violation solely on this basis is a separate matter. *See generally Sirrell v. State,* 146 N.H. 364, 780 A.2d 494, 500–01 (2001) (analyzing cases from other states, and concluding that, to establish a uniformity violation premised on the under-assessment of other taxpayers, one must show a pattern of taxation that is not proportional and reasonable, and "must prove specific facts showing a widespread scheme of intentional discrimination").

from a facial challenge to the relevant taxing statute. One could argue that a slight broadening can be gleaned from this Court's recent decision in *Kowenhoven*, where we allowed the exercise of equity although the taxing statute was not at issue. The present case is conceptually distinct, however, as in *Kowenhoven*, the challenge was based on a practices-and-procedures memo issued to case reviewers, which allegedly put into place a general methodology for adjudicating grievances that violated due process on its face. Under those circumstances, we stated that "the general procedures of which Appellants complaint can be facially tested against constitutional norms unaided by agency expertise," and hence, "there is little practical difference between the present challenge and one in which the constitutional validity of a taxing statute is in issue." *Kowenhoven*, 587 Pa. at 559, 901 A.2d at 1012. At issue here is whether the County's particular *implementation* of the CAMA system for tax years 2001 and 2002 reflected certain features that in practice led to a non-uniform result. The answer to that question cannot be gleaned through review of generalized directives such as legislation, regulations, or policy memos, but instead requires consideration of the specific manner in which reassessment was accomplished and its results.

As discussed above, the Commonwealth Court has permitted the exercise of equity where certain features other than a facial statutory defect are present. That court's decisions which were premised upon a finding of an incomplete county-wide assessment, *see, e.g., City of Lancaster*, 143 Pa.Cmwlth. at 498, 599 A.2d at 300; *City of Harrisburg*, 677 A.2d at 354, are not particularly helpful here, as neither party disputes that the County actually completed its mass assessments for 2001 and 2002 before any taxes were levied. Arguably more relevant, however, are the decisions in *Millcreek Township* and *Ackerman*, where the trial court ultimately discerned pervasive county-wide inequalities which rendered the overall assessment picture non-uniform. In both of those cases, the Commonwealth Court affirmed the trial court's decision to grant mandamus relief which directed county officials to per-

form a comprehensive revaluation of all of the properties in the county so as to equalize the assessments by bringing them up to date.

The County observes that there is a factual distinction between those controversies and the present one, as those cases entailed "old and stale countywide assessment[s]" due to "longtime neglect," combined with the selective reassessment of certain properties. Brief for Appellees at 22–23. Here, by contrast, the mass assessments were undertaken recently and without any deliberate singling-out of a particular group of taxpayers for disparate treatment. See id. While all of this may be true, it does not disprove that an equally non-uniform assessment picture may result from a recently-completed county-wide mass reappraisal if the system used to implement the reappraisal contains certain defects. Therefore, the recentness of the County's 2001 and 2002 reassessments is not alone sufficient to preclude mandamus. The predicate question, as we see it, is whether a substantial constitutional issue can ever be present based solely upon the manner in which the governing taxing statute is applied.

We find that it can. Here, for instance, the County is required to reassess all of the several hundred thousand properties in the County every year, see Allegheny County Administrative Code § 5–209.10(C, D); Assessment Ordinance § 201.03, thus necessitating the use of a sophisticated computer system to accomplish this task in a relatively short timeframe. To take an extreme example, a patent defect in such a system could theoretically cause severe disparities as to subclasses of properties with, for example, properties in the City of Pittsburgh being valued at one percent of actual value, while all others are valued at one hundred times actual value. Under such circumstances, it would make little sense to conclude that no substantial constitutional issue was raised simply because the relevant taxing statutes, ordinances, or regulations were not being challenged on their face. This is consistent with our recent recognition, expressed in *Kowenhoven*, that *Borough of Green Tree* "did not purport to lay down a *per se* rule precluding [equity] jurisdiction absent a facial

challenge to the governing statute," but instead "left room for equity jurisdiction in other settings in which requiring adherence to the statutory avenue would be of little benefit." *Kowenhoven,* 587 Pa. at 557, 901 A.2d at 1010.

 While equity jurisdiction thus may be exercised to entertain a complaint raising the type of constitutional infirmity alleged here, this does not end our inquiry because, to determine whether the trial court erred, account must also be taken of the specific features of the complaint and the manner of relief sought. As reflected in the Complaint's prayer for relief, Appellants were in essence seeking two separate forms of judicial directives. First, they wanted their own assessments lowered in accordance with what they considered to be the true values of their properties. Simply showing that their properties were over-valued, however, is a subject plainly within the ordinary grievance process prescribed by statute. What is at issue here, then, for purposes of equity, is Appellants' contention that the CAMA system was applied incorrectly in a more general way, and hence, that the court should direct the County to re-apply it correctly so as to alter the valuations of tens of thousands of properties.

Properly understood, then, the equity relief Appellants sought in the trial court was in the nature of mandamus, as it subsumed an assertion (albeit perhaps an implicit one) that the County has a legal duty, imposed by Article I, Section VIII, to revise its mass assessments for 2001 and 2002, and that Appellants have a right, guaranteed by that same provision, to pay taxes according to the results of such revisions. *See generally Delaware River Port Auth. v. Thornburgh,* 508 Pa. 11, 20, 493 A.2d 1351, 1355 (1985) (action is one lying in mandamus if it is instituted to compel official performance of a duty where there is a legal right in the plaintiff and a corresponding duty in the defendant); *Maute v. Frank,* 441 Pa.Super. 401, 403, 657 A.2d 985, 986 (1995) ("[S]ince the complaint states a viable mandamus claim, we will treat that portion of the action as such, regardless of the fact that the complaint is not titled properly as one involving mandamus."). Although *Millcreek Township* and *Ackerman* do not delineate

the precise nature of the factual averments necessary in a tax appeal to support mandamus, we note that the allegations may not amount merely to speculative possibilities that the official action sought will rectify a perceived lack of constitutional uniformity, in view of the fact-based inquiry that must be conducted. This is particularly true where, as here, the predicate constitutional violation is premised upon statistical forms of proof. *Cf. Cimaszewski v. Board of Prob. & Parole*, 582 Pa. 27, 47, 868 A.2d 416, 428 (2005) (where a petitioner seeks mandamus relief predicated upon an *ex post facto* violation made out through statistical proofs, dismissal is appropriate if the petitioner fails to plead his statistical evidence with sufficient specificity).

■ As quoted above, a central part of the trial court's basis for dismissal related to Appellants' failure to plead with specificity in this regard. We believe the court expressed a legitimate concern. In the first place, although the complaint alleged that there was a systemic under-valuation in the high-end properties and the opposite effect for low-end parcels, "taxation is not an exact science," and hence, "perfect uniformity or absolute equality is not required," *Columbia Gas Transmission Corp. v. Commonwealth*, 468 Pa. 145, 151, 360 A.2d 592, 595 (1976); instead, some practical inequalities are anticipated, and rough uniformity with a limited amount of variation is permitted so long as the taxing scheme does not impose substantially unequal tax burdens. *See Leonard v. Thornburgh*, 507 Pa. 317, 321, 489 A.2d 1349, 1352 (1985); *Sablosky v. Messner*, 372 Pa. 47, 57, 92 A.2d 411, 416 (1952). *See generally* 84 C.J.S. *Taxation* § 30 (2006). Thus, to support the proposition that the County was duty-bound to re-apply the CAMA system in an alternate manner, Appellants' allegations would preliminarily have had to demonstrate the absence of rough or substantial equality in the present operation of the CAMA system. They would also necessarily have had to specify the manner in which the system should be re-applied so that constitutionally acceptable results would obtain.

As to the former, although the Complaint cited statistics allegedly furnished by the City of Pittsburgh pertaining to the results of the mass reassessment, they did not allege any of the traditional statistical indicators that rough or substantial uniformity was absent, such as the PRD that was actually achieved, *see supra* note 2, or the resulting coefficient of dispersion.[7] They did contend that low-value transfers were improperly excluded, that quantitative factors were over-weighted, and that the subject area had been divided into 1,800 neighborhoods. However, they did not maintain, for example, that the County's decision to exclude from consideration property transfers for less than $10,000 lacked a valid basis in generally accepted mass appraisal techniques; nor did they specify how the County acted improperly in its weighting of such elements as unit size and number of bedrooms—which are undoubtedly relevant in reaching an accurate valuation—or how the neighborhood division scheme operated to produce unequal results. Furthermore, as the trial court recited, they did not describe the manner in which the County's data should be supplemented or any other specific correction that the County should incorporate into its system—an omission that weighs against the finding of a *prima facie* case for mandamus.

This is not to say that mandamus relief was necessarily wrongly granted in *Millcreek Township* and *Ackerman*, where

---

7. The coefficient of dispersion (COD) is the average deviation from the median, mean, or weighted mean ratio of assessed value to fair market value, expressed as a percentage of that figure. *See* Allegheny County Administrative Code § 5–210.01(A) (defining the COD in terms of the median ratio). A "high coefficient of dispersion indicates a high degree of variance with respect to the assessment ratios under consideration. A low coefficient of dispersion indicates a low degree of variance. In other words, a low coefficient of dispersion indicates that the parcels under consideration are being assessed at close to an equal rate." *Waccabuc Constr. Corp. v. Assessor of the Town of Lewisboro*, 166 A.D.2d 523, 524, 560 N.Y.S.2d 805, 806 (1990). *See generally M.T. Assocs. v. Town of Randolph*, 889 A.2d 740, 743 (Vt.2005); *Sirrell*, 780 A.2d at 498; BERT M. GOODMAN, ASSESSMENT LAW & PROCEDURE IN PENNSYLVANIA 327 (2002–03 ed.). The maximum acceptable COD for Allegheny County is ten, fifteen, or twenty percent, depending on the type of property being assessed and the type of jurisdiction it is in. *See* Allegheny County Administrative Code § 5–210.10; Assessment Ordinance § 301.03.

the most recent county-wide reappraisal was decades old, leading to the natural development of widespread substantial inequities over time as properties were improved, market dynamics shifted, and so on. Where, however, a mass reappraisal of the entire county has just been completed, and there is no allegation that the same was undertaken in bad faith, the trial court could reasonably conclude that, absent more specific allegations as to how and/or why the techniques used were faulty, and the particular manner in which the County should correct the perceived inequities, the court was in essence—and improperly—being asked to "assume responsibility for the operation of the assessment system" that was otherwise the exclusive responsibility of the local agency. Under such circumstances, we find that the court acted within its discretion in dismissing the Complaint.[8]

8. In concurrence, Mr. Chief Justice Cappy indicates that we have not afforded sufficient attention to the role of administrative expertise in our analysis of the availability of equity jurisdiction. *See* Concurring Opinion 589 Pa. at 134–35, 907 A.2d at 532. In support of this proposition, he references *Lehman v. Pennsylvania State Police*, 576 Pa. 365, 839 A.2d 265 (2003). *Lehman*, however, addressed whether constitutional challenges are waived for failure to raise them at the agency level in the context of judicial review ensuing after statutory remedies have been pursued, and not the availability of original equity jurisdiction where the litigants seek to avoid the statutory process in the first instance based on the assertion that such process cannot yield an adequate remedy. In the latter context, this Court has recognized that concerns related to administrative expertise are diminished. *See, e.g., Shenango*, at 438 (noting the substantial role of administrative expertise "when the administrative remedy is as likely as the judicial remedy to provide the desired result," but highlighting that "a distinctly different situation is presented where the remedy afforded through the administrative process is inadequate"). The two-part *Borough of Green Tree/Shenango Valley Osteopathic Hosp./Kowenhoven* test that we apply here follows from this distinction and is now well recognized. Further, in our view it is sufficiently broad to subsume all necessary consideration of the administrative function. *See supra* 589 Pa. at 124–25, 907 A.2d at 526 ("[B]ypassing the agency process within the framework of a direct attack on the enabling statute is inherently less likely to do violence to the agency's role as fact-finder and applier of specialized expertise than in the context of an 'as-applied' challenge."); *Borough of Green Tree*, 459 Pa. at 279, 328 A.2d at 824 ("Where the administrative process has nothing to contribute to the decision of the issue and there are no special reasons for postponing its immediate decision, exhaustion should not be required."); *Kowenhoven*, 587 Pa. at 557, 901 A.2d at 1010 ("[T]he less need there is for compliance with an agency's

## IV.

For the reasons stated, the order of the Commonwealth Court, affirming the order of the common pleas court, is affirmed.

Justices CASTILLE, NEWMAN, EAKIN and BAER join the opinion.

Former Justice NIGRO did not participate in the decision of this case.

Chief Justice CAPPY files a concurring opinion.

Chief Justice CAPPY concurring.

I agree with the conclusion reached by the majority that the lower courts properly determined that Appellants may not proceed in equity with their tax assessment matter. Yet, I do not agree with the reasoning employed by the majority and thus cannot join the opinion.

As fully detailed by the majority, Appellants filed their action asserting that the Computer Assisted Mass Appraisal ("CAMA") system applied by Allegheny County in conducting its property assessments is flawed and systematically places a greater proportional burden of property taxes on owners of lower valued properties. The majority states that equity jurisdiction "may be exercised to entertain a complaint raising

procedures as a prerequisite to informed constitutional decision making, then corresponding greater is the embarrassment caused to litigants by requiring conformity with the statutorily-prescribed remedy" (quoting *Borough of Green Tree*, 459 Pa. at 281, 328 A.2d at 825)); *id.* at 559, 901 A.2d at 1012 ("[G]iven that the general procedures of which Appellants complain can be facially tested against constitutional norms unaided by agency expertise, there is little practical difference between the present challenge and one in which the constitutional validity of a taxing statute is in issue.").

In any event, even if the addition of a distinct third element were appropriate, the concurrence offers no reason to suggest that both elements of the prevailing two-part inquiry should not be enforced. Thus, in light of our finding that Appellants have not satisfied the first prong—that is, that they have failed to raise a substantial constitutional issue in the context of their request for mandamus (a proposition with which the concurrence does not appear to disagree)—we see no need to address any proposed additional requirement at this juncture.

the type of constitutional infirmity alleged here...." M.O. 589 Pa. at 129, 907 A.2d at 529. The majority concludes that equity will not lie in this matter, though, as Appellants failed "to demonstrate the absence of rough or substantial equality in the present operation of the CAMA system." *Id.* 589 Pa. at 130, 907 A.2d at 530.

I disagree with the majority's conclusion that in general, equity jurisdiction may be exercised in matters such as the one *sub judice.* The Majority arrives at its conclusion via application of a two-pronged test. The Majority states that equity jurisdiction will lie where a taxpayer "(1) raise[s] a substantial constitutional issue, and (2) lack[s] an adequate remedy through the administrative appeal process." M.O. 589 Pa. at 122, 907 A.2d at 524–25.

While the test as enunciated by the Majority is correct insofar as it goes, I find it to be incomplete. I believe it misses an important factor in our exhaustion of administrative remedies doctrine. Our exhaustion doctrine has us examine not only whether there is a substantial constitutional question and an adequate administrative remedy; it also directs us to question whether administrative input would be helpful. We have stated that "[t]he primary purpose of the exhaustion doctrine is to ensure claims will be addressed by the body having expertise in the area. This is particularly important where the ultimate decision rests upon factual determinations lying within the expertise of the agency, or where agency interpretations of relevant statutes or regulations are desirable." *Lehman v. Pennsylvania State Police,* 576 Pa. 365, 839 A.2d 265, 275 (2003). I believe cases such as the matter *sub judice* clearly warrant administrative agency involvement. Determining whether a property assessment was properly done is beyond cavil a fact-intensive inquiry, one in which the agency's expertise would be most welcome. The fact that this matter raises a macro, county-wide challenge does not render agency involvement unnecessary; if anything, specialized administrative knowledge could prove even more helpful in such a complex matter.

Thus, respectfully, I find the majority's two-prong test for equity jurisdiction inadequate in that it fails to acknowledge specifically the need for and fails to accord sufficient deference to administrative expertise as required by the exhaustion of administrative remedies doctrine. Wholesale resolution of the appeals *sub judice* without first having each case reviewed by the agency with the most expertise on the subject matter is not only jurisprudentially improper but also ill-advised.

Accordingly, while I agree with the result reached by the majority, I cannot join its reasoning.