IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Charles J. Betters, Bet-Tech International, Inc., C.J. Betters Corporation, C.J. Betters Real Estate Corporation, Betters Real Estate Holdings, L.P., Barclay Hills Builders, LLC., Village Shops I, L.P., Village Shops II, L.P., Aliquippa Tin Mill, L.P., Midland L.P., Brodhead North Associates, L.P. | : : : : : : : : : : : |
| v. | : No. 152 C.D. 2018 : Argued: October 16, 2018 |
| Beaver County and Tony Amadio, Daniel C. Camp III, and Sandie Egley, Beaver County Commissioners, and Kevin J. McIlwain, Chief Assessor | : : : : : |
| Green Township Board of Supervisors, Hopewell Township Board of Commissioners, and Potter Township Board of Supervisors | : : : : : |
| Appeal of: Beaver County and Tony Amadio, Daniel C. Camp III and Sandie Egley, Beaver County Commissioners, and Kevin J. McIlwain, Chief Assessor | : : : : : : |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION
BY JUDGE WOJCIK                                    FILED:  December 18, 2018

Beaver County, Beaver County Commissioners Tony Amadio, Daniel

C. Camp III, and Sandie Egley, and Chief Assessor Kevin J. McIlwain (collectively,

the County) appeal from an order of the Court of Common Pleas of Beaver County

(trial court) that determined that the County's base-year method of property valuation violated the Uniformity Clause of Article VIII, Section 1 of the Pennsylvania Constitution and the Consolidated County Assessment Law (Assessment Law)[1] and mandated the County to complete a countywide reassessment by 2020. The County asks whether the trial court erred by refusing to exclude objected-to expert testimony and in determining that Taxpayers[2] were entitled to relief despite the fact that they did not introduce any evidence that they have suffered a specific harm to their particular properties. Discerning no error, we affirm.

## I. Background

In December 2015, Taxpayers filed a complaint in mandamus to compel the County to perform a countywide reassessment pursuant to Section 8801(b)(1)(i) of the Assessment Law, 53 Pa. C.S. §8801(b)(1)(i). Taxpayers alleged, *inter alia*, that the last countywide assessment was in 1982, and that the County has been applying insufficient and outdated methods for valuing properties, which are grossly inequitable and non-uniform. According to Taxpayers, the 1982 base year was so long ago that the values are not logically related to the present; all new construction since 1982 is assessed at the 1982 values; and the County's assessment of properties at 50% of their market value is not uniform throughout the County. Taxpayers further asserted that the County's base-year system does not

---

[1] 53 Pa. C.S. §§8801-8868.

[2] Taxpayers are Charles J. Betters, Bet-Tech, International, Inc., C.J. Betters Corporation, C.J. Betters Real Estate Corporation, Betters Real Estate Holdings, L.P., Barclay Hills Builders, LLC., Village Shops I, L.P., Village Shops II, L.P., Aliquippa Tin Mill, L.P., Midland L.P., and Brodhead North Associates, L.P. They are various entities that own parcels of real property throughout the County.

have a method to equalize the assessed values of property that have been subject to assessment appeals and the assessments of properties to their predetermined ratios. They alleged that the base-year system effectively freezes some assessments at their predetermined ratios yet permits properties subject to recent reassessment appeals to be valued at 100% of their current market values with the mandatory application of the common level ratio. Based on the foregoing, Taxpayers averred that the County was in violation of the Uniformity Clause of the Pennsylvania Constitution and the Assessment Law. Taxpayers requested the trial court to order the County to exercise its authority to undertake a countywide reassessment.

In response, the County and Intervenors[3] filed preliminary objections, which the trial court denied. The County and Intervenors filed answers to the complaint. Thereafter, Taxpayers served the County with requests for admissions to which the County responded.

The trial court held a nonjury trial, during the course of which Taxpayers offered the testimony of expert witnesses, Joseph Nardone and Robert Denne, and their reports. Nardone testified that he was on the team that conducted the last countywide reassessment in Beaver County in 1982, which is still the base year used in assessing property. Nardone testified that he assembled a four-man team, including himself, Denne, Daniel Anderson and Michael Suley, to analyze and proffer an opinion regarding the uniformity of the County's system of property tax assessment. Nardone served as a project manager. Anderson extracted data from the County's Computer Assisted Mass Appraisal (CAMA) system. Suley compiled sales data from the Multiple Listing Service (MLS), more specifically, the West

---

[3] Intervenors are the Green Township Board of Supervisors, Hopewell Township Board of Commissioners and Potter Township Board of Supervisors. They have chosen not to participate in this appeal.

3

Penn Multi-list. Thereafter, Denne performed calculations on the data compiled by Anderson and Suley. Based on this data, Denne opined that the County has a coefficient of dispersion (COD) of 34.5% and that the system of tax assessment employed by the County was not uniform.

The County and Intervenors objected to Denne's conclusions arguing that they were hearsay because neither Anderson nor Suley testified, and that a proper foundation for Denne's testimony had not been laid. Reproduced Record (R.R.) at 160a-61a. However, the trial court overruled their objections, stating:

> The [County] and the Interveners [sic] all had received the report [of Denne] in advance, they knew the identity of those individuals who collect[ed] the data, and if there's a witness that's not going to be here, then that witness's absence is not only attributed to the [Taxpayers], it's going to be attributed to any available party who [sic] could've called that witness to the stand.

R.R. at 161a. The trial court stated it would entertain motions to continue the hearing so that the County could bring in the necessary witnesses, which the County declined. R.R. at 171a.

At the close of the hearing, the County and Intervenors each moved for a nonsuit, pursuant to Pa. R.C.P. No. 230.1, on the basis that: Taxpayers did not lay a proper foundation for Denne's testimony; Taxpayers did not introduce any evidence relating to their specific properties; and, mandamus relief is not available. The trial court denied their motions. Ultimately, on December 28, 2017, the trial court issued a 28-page opinion and order declaring that the base-year method of valuation employed by Beaver County violates the Uniformity Clause and the Assessment Law because it does not reflect, uniformly and accurately, the proper assessed values of the 96,000 tax parcels in the County. The trial court directed the

4

County to conduct a countywide reassessment by June 15, 2020. From this decision, the County filed the instant appeal.

## II. Issues

In this appeal,[4] the County contends that the trial court erred by admitting Denne's testimony over lack of proper foundation and hearsay objections. In addition, it asserts that the trial court erred by determining that Taxpayers were entitled to relief despite the fact that they did not introduce any evidence that they have suffered a specific harm to their particular properties as a result of the County not doing a countywide reassessment since 1982.

## III. Discussion
### A. Evidence

The County claims that the trial court erred by admitting Denne's testimony into evidence over the objections of the County and Intervenors because the facts upon which Denne relied were not articulated or made part of the record. Pursuant to Rule 705 of the Pennsylvania Rules of Evidence, the salient facts relied upon as the basis of the expert opinion must be in the record so that the factfinder may evaluate the opinion. Rule 705 differs from the federal rules of evidence, which do not require the expert to disclose facts upon which an opinion is based prior to expressing the opinion. Instead, the cross-examiner bears the burden of probing the basis of the opinion. Such is not the case under Pennsylvania's evidentiary rules. Here, Denne performed calculations on sales data provided by Suley. However, Taxpayers did not present the testimony of Suley or offer the sales data relied upon

---

[4] In tax assessment appeals, our review is limited to determining whether the trial court abused its discretion, committed an error of law, or made findings unsupported by substantial evidence. *Fasnacht v. Board of Property Assessment Appeals of Schuylkill County*, 156 A.3d 365, 368 (Pa. Cmwlth. 2017).

5

by Denne. Moreover, Nardone and Denne both testified that Suley did not merely report sales data, but "weeded out all non 'arms-length transactions'" prior to delivering the data to Denne. Appellants' Brief at 11. The County asserts that it is unclear which sales were excluded or how the data was compiled or manipulated. In overruling their objections, the trial court inferred that if the County wanted the facts upon which Denne's opinions were based to be made part of the record, the County could have subpoenaed witnesses, *i.e.*, Anderson and Suley, to testify. *See* R.R. at 171a. However, it was not the County's burden under Pennsylvania's Rules of Evidence to probe the basis of the expert opinion.

Rule 705 of the Pennsylvania Rules of Evidence states: "if an expert states an opinion the expert must state the facts or data upon which the opinion is based." Pa.R.E. 705. The Comment to Rule 705 provides that the rule differs significantly from its federal counterpart, F.R.E. 705, which does not require an expert witness to disclose the facts upon which an opinion is based prior to expressing the opinion; instead the cross-examiner bears the burden of probing the basis for the opinion. Pa.R.E. 705, Comment. Pennsylvania does not follow the Federal Rule. *See id.*; *see also Kozak v. Struth*, 531 A.2d 420, 423 (Pa. 1987) (declining to adopt F.R.E. 705, the Court reasoned that "requiring the proponent of an expert opinion to clarify for the jury the assumptions upon which the opinion is based avoids planting in the juror's mind a general statement likely to remain with him in the jury room when the disputed details are lost"). *Kozak* requires disclosure of the facts used by the expert in forming an opinion. 531 A.2d at 423. The required disclosure can be made by simply stating the facts or data upon which the opinion is based. *See* Packel and Poulin, Pennsylvania Rules of Evidence, §705-1 at 769 (4th ed. 2013).

Moreover, Rule 703 provides:

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

The Comment to Rule 703 recognizes that the first two sentences of the rule are identical to its federal counterpart, F.R.E. 703. Pa.R.E. 703, Comment. However,

It does not include the third sentence of the Federal Rule that provides that the facts and data that are the bases for the expert's opinion are not admissible unless their probative value substantially outweighs their prejudicial effect. This is inconsistent with Pennsylvania law which requires that facts and data that are the bases for the expert's opinion must be disclosed to the trier of fact. *See* [Pa.R.E.] 705.

[Pa.R.E.] 703 requires that the facts or data upon which an expert witness bases an opinion be "of a type reasonably relied upon by experts in the particular field . . ." Whether the facts or data satisfy this requirement is a preliminary question to be determined by the trial court under [Pa.R.E.] 104(a). . . .

When an expert testifies about the underlying facts and data that support the expert's opinion and the evidence would be otherwise inadmissible, the trial judge upon request must, or on the judge's own initiative may, instruct the jury to consider the facts and data only to explain the basis for the expert's opinion, and not as substantive evidence.

An expert witness cannot be a mere conduit for the opinion of another. An expert witness may not relate the opinion of a non-testifying expert unless the witness has reasonably relied upon it in forming the witness's own opinion. *See, e.g., Foster v. McKeesport Hospital*, [394

7

A.2d 1031 (Pa. Super. 1978)]; *Allen v. Kaplan*, [653 A.2d 1249 (Pa. Super. 1995)].

*Id.*

In *Commonwealth v. Thomas*, 282 A.2d 693, 698 (Pa. 1971), the Supreme Court permitted an exception to the rule allowing experts to rely upon reports of others not in evidence, *i.e.*, inadmissible hearsay, provided the reports were of the type customarily relied on by the expert in the field in forming opinions. Although *Thomas* was limited to medical opinions, the exception has been expanded in non-medical opinion cases. *See, e.g., Commonwealth v. Bowser*, 624 A.2d 125 (Pa. Super. 1993) (state trooper's reliance upon hearsay evidence from local car dealerships regarding book sizes and weights of cars involved in accident for purposes of computing their relative speeds at impact did not render the trooper's opinion testimony regarding reconstruction of the accident inadmissible); *Steinhauer v. Wilson*, 485 A.2d 477, 479 (Pa. Super. 1984) (expert's testimony concerning cost of repairing alleged defects in house properly admitted where estimates expert gave were his own, even though they might have been reached in part by reliance upon hearsay figures provided by various subcontractors whom he had consulted). The proponent must establish that the facts or data forming the bases for the opinion are the type reasonably relied upon by experts in the particular field. *Kimberly Clark Corp. v. Workers' Compensation Appeal Board (Bullard)*, 790 A.2d 1072, 1076 (Pa. Cmwlth. 2001).

In addition, Rule 104 provides: "The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, *the court is not bound by evidence rules*, except those on privilege." Pa.R.E. 104 (emphasis added). The Rule is premised on the notion that "the law of evidence is a 'child of the jury system' and that *the rules of evidence*

8

*need not be applied when the judge is the fact finder. The theory is that the judge should be empowered to hear any relevant evidence to resolve questions of admissibility*." Pa.R.E. 104, Comment (citing *Commonwealth v. Raab*, 934 A.2d 695 (Pa. 2007)) (emphasis added). A court's decision to admit evidence does not preclude the parties from offering evidence relevant to the weight or credibility of the evidence. *See* Pa.R.E. 104(e).

Here, the trial court conducted a nonjury trial. Denne and Nardone testified that utilizing the MLS is in accord with the International Association of Assessing Officers (IAAO) standards. R.R. at 133a, 146a; *see Clifton v. Allegheny County*, 969 A.2d 1197, 1233 (Pa. 2009) (recognizing wide acceptance of the IAAO standards for evaluating the adequacy of an assessment). Denne testified that the IAAO established standards in the 1990s for judgments to be made on assessment of real property for tax purposes. R.R. at 154a-55a.

Nardone testified that he assembled a team with the objective of gathering information about sale prices and assessment values in order to evaluate, under the IAAO standards, uniformity in assessment. R.R. at 117a. Nardone tasked Anderson to extract both assessment and sales data from the County's CAMA system. However, Nardone testified that the sales data from the County's system was outdated and unavailable so the sales data was obtained from the MLS. R.R. at 129a-33a, 146a. According to Nardone, the accepted practice of obtaining data from the MLS was customary, if not preferred, and within the IAAO standards. R.R. at 133a, 146a. Nardone discussed the challenges the team faced with data retrieval and explained in detail how the team matched the parcel identification numbers from the MLS sales data to the parcel identification numbers in the County's assessment data. R.R. at 135a-37a.

9

Nardone further testified that Suley extracted the sales data from the MLS. R.R. at 118a, 142a. According to Nardone, Suley utilized "valid arm's length sales transactions" from the MLS to correlate with the master file of County records prepared by Anderson. R.R. at 142a; Supplemental Reproduced Record (S.R.R.) at 19a. Denne testified that Suley pulled actual sales transactions rather than houses simply listed for sale. R.R. at 198a, 201a. Denne testified that, while the MLS is not foolproof, he based his opinion on over 4,500 records. R.R. at 198a, 201a. Denne reviewed sales records from 2014 through 2017, explaining that the "the more sales you have, . . . the more reliability you have in the statistics your [sic] calculating as they may apply to the population." R.R. at 202a.

Denne admitted that he refined the sales data from 6,500 properties to 4,500 properties because some of the data could not be matched to the County records. R.R. at 201a. Denne testified he adhered to "the trimming rules that are recited in the report and promulgated by [the] IAAO in terms of discarding sales that fall outside the bounds of 1 1/2 interquartile ranges from the median ratio." R.R. at 202a.

Upon review, Taxpayers disclosed the facts upon which Denne based his opinion. Taxpayers established that the MLS was an accepted resource of sales data sanctioned by the IAAO to assist assessment experts in formulating opinions. Although some of the testimony was based on hearsay evidence, such was permissible under Rule 104 in the context of ruling on the admissibility of Denne's opinions. The County offers no basis upon which to conclude that the data gathered and relied upon by Denne was unreliable. Although Suley and Anderson, the team members tasked with gathering sales and assessment data, did not testify, Nardone and Denne testified regarding the contents of the data assembled that formed the

bases of Denne's expert opinion. The County was in possession of the reports prepared by both Nardone and Denne (S.R.R. at 15a-46a), and fully aware of the data relied upon, yet chose not to subpoena Suley or Anderson to testify or present any evidence to refute the testimony of Denne. In response to the County's evidentiary objections, the trial court afforded the County the opportunity to continue the hearing to call additional witnesses, which it declined. R.R. at 171a. Thus, the trial court did not err or abuse its discretion by admitting Denne's testimony over the County's and Intervenors' objections.

## B. Nonsuit

Next, the County claims that the trial court erred by denying the County's motions for nonsuit where Taxpayers failed to introduce any evidence of a harm or damage personal to them. According to the County, the taxpayer is only entitled to relief under the Uniformity Clause if it can show its property is assessed at a higher percentage of fair market value than other properties. Such was not shown here. In fact, Taxpayers' expert admitted he did not know if any of Taxpayers' properties were part of the data he analyzed in forming his conclusion.

The Uniformity Clause of Article VIII, Section 1 of the Pennsylvania Constitution provides "all taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. VIII, §1. The "Pennsylvania Constitution requires that property valuations be based, as nearly as practicable, on the relative value of each property to market value." *Clifton*, 969 A.2d at 1213-14; *accord Downingtown Area School District v. Chester County Board of Assessment Appeals*, 913 A.2d 194, 199 (Pa. 2006).

11

Our Supreme Court has held that, when a taxpayer presents a Uniformity Clause challenge to a county's method of valuation, "*the taxpayer must demonstrate a lack of uniformity in assessments*, whether the result of a single, isolated misassessment of his own property *or the result of a statutory scheme of valuation causing mass misassessment*." *Clifton*, 969 A.2d at 1213 (emphasis added). In *Clifton*, the Supreme Court interpreted the Uniformity Clause as requiring all real property to be treated as a single class entitled to uniform treatment. *Id.*

The County relies on *In re: Sullivan*, 37 A.3d 1250 (Pa. Cmwlth. 2012), *Garret Group, L.P. v. County of Schuylkill*, 667 A.2d 255 (Pa. Cmwlth. 1995), and *Smith v. Carbon County Board of Assessment*, 10 A.3d 393 (Pa. Cmwlth. 2010), as requiring a taxpayer to prove that its property has been treated differently than other property owners. However, in these cases, the taxpayers were challenging their individual assessments and offered proof regarding the lack of uniformity as it pertained to their properties as compared to similar properties. The taxpayers in those cases were not challenging the statutory scheme.

In contrast, Taxpayers here filed a mandamus action challenging the entire statutory scheme of valuation, not their individual assessments, as violative of the Uniformity Clause and Assessment Law. They have asserted mass misassessment in the County.

Mandamus is appropriate if it is instituted to compel official performance of a duty and where there is a legal right in the plaintiff and corresponding duty in the defendant. *Beattie v. Allegheny County*, 907 A.2d 519, 524 (Pa. 2006). In *Beattie*, the Supreme Court set forth a two-part test required to be met in order to invoke a trial court's equitable jurisdiction. First, the taxpayer must "raise a substantial constitutional issue." 907 A.2d at 524. Second, the

12

taxpayer must "lack an adequate remedy through the administrative appeal process." *Id.* at 524-25. "[W]here relying solely on the statutory appeal mechanism would result in a 'multiplicity of duplicative lawsuits and, in contrast, an action in equity would provide a tidy global resolution,' the legal remedy should be deemed inadequate." *Id.* at 527 (quoting *Kowenhoven v. Allegheny County*, 901 A.2d 1003, 1008 (Pa. 2006)); *accord Clifton*, 969 A.2d at 1227 (observing the individual appeals process is inadequate to address claims of pervasive inequities). In *Clifton*, the Supreme Court endorsed the exercise of equity jurisdiction to entertain the plaintiffs' as-applied uniformity challenge to an assessment statute. *Clifton*, 969 A.2d at 1209 n.17; *see Valley Forge Towers Apartments N, LP v. Upper Merion Area School District*, 163 A.3d 962, 970 (Pa. 2017).

In support of their mandamus action, Taxpayers demonstrated a lack of uniformity in assessments based on a sampling of 4,500 properties sold between 2014 and 2017. Having challenged the system as a whole, Taxpayers did not pursue multiple, duplicative lawsuits based upon individual property tax assessment appeals. *See Beattie*, 907 A.2d at 527. Consequently, evidence of a harm or damage personal to them was not required. *See Clifton*. Thus, the trial court did not err or abuse its discretion by denying the County's and Intervenors' motions for nonsuit on this basis.

## IV. Conclusion

Upon review, the trial court did not err or abuse its discretion by admitting Denne's testimony or denying nonsuit. Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles J. Betters, Bet-Tech
International, Inc., C.J. Betters
Corporation, C.J. Betters Real
Estate Corporation, Betters Real
Estate Holdings, L.P., Barclay Hills
Builders, LLC., Village
Shops I, L.P., Village Shops II, L.P.,
Aliquippa Tin Mill, L.P., Midland L.P.,
Brodhead North Associates, L.P.

              v.

Beaver County and Tony Amadio,
Daniel C. Camp III, and Sandie Egley,
Beaver County Commissioners, and
Kevin J. McIlwain, Chief Assessor

Green Township Board of Supervisors,
Hopewell Township Board of
Commissioners, and Potter Township
Board of Supervisors

Appeal of: Beaver County and Tony
Amadio, Daniel C. Camp III and
Sandie Egley, Beaver County
Commissioners, and Kevin J. McIlwain,
Chief Assessor

:  No. 152 C.D. 2018

# O R D E R

AND NOW, this 18th day of December, 2018, the order of the Court of Common Pleas of Beaver County, dated December 28, 2017, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge