**Guntram WEISSENBERGER
d/b/a Black Hawk Circle
Apartments**

v.

**CHESTER COUNTY BOARD OF AS-
SESSMENT APPEALS and Down-
ingtown Area School District.**

**Appeal of: Downingtown
Area School District.**

Commonwealth Court of Pennsylvania.

Argued Dec. 12, 2012.
Decided March 8, 2013.

Mark P. Thompson and Scot R. Withers, West Chester, for appellant.

Charles G. Miller and Donald T. Petrosa, Media, for appellees Guntram Weissenberger and Black Hawk Circle Apartments.

Jeffrey R. Sommer, West Chester, for appellee Chester County Board of Assessment Appeals.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge.

OPINION BY Judge SIMPSON.

In these tax assessment appeals raising as-applied constitutional challenges, Downingtown Area School District (School District) appeals the decision of the Court of Common Pleas of Chester County (trial court) which reversed an increase in the assessed value of two parcels based on a determination that the School District intentionally and selectively exercised its right to appeal, thereby violating the taxpayer's entitlement to uniform treatment. More particularly, the trial court sustained the appeals of Guntram Weissenberger d/b/a Black Hawk Circle Apartments (Taxpayer) from decisions of the Chester County Board of Assessment Appeals (Board) which increased the assessed value of two parcels on which an apartment complex is located. Applying existing case law, we reverse, thereby reinstating the increased assessed values found by the Board.

### Background

Taxpayer owns an apartment complex situated on two parcels of property located in the School District. One parcel is six-and-one-half acres in size and is improved with seven buildings containing 108 apartments. The other parcel is three-and-one-half acres, and is improved with seven buildings containing ninety-three apartment units. For tax year 2003, the larger parcel had an assessed value of $3,174,040, and the smaller parcel was assessed at $2,937,810.

The School District participates in an organization known as the Chester County School District Managers. That organization hired a real estate appraisal firm, Cole, Lynch, to review the market values and assessments for all apartment complexes in Chester County for the 2004 tax year. Cole, Lynch generated a report that identified apartment complexes that were potentially under-assessed in the County. According to the report, five of the potentially under-assessed apartment properties (a total of six tax parcels) were in the School District. Reproduced Record (R.R.) at 62a. Coyle, Lynch recommended that an assessment appeal be taken by School District only with respect to the two tax parcels owned by Taxpayer. *Id.*[1] Based upon the potential for increased tax revenues, the School District asserts it made a "business decision" to accept the recommendation and appeal Taxpayer's assessments. The School District did not take any other assessment appeal that year—commercial, residential or otherwise.

### School District's Appeal to Board

Following a hearing, the Board increased the fair market value of each parcel by approximately $1 million (specifically, a total of $2,128,050). The resulting increased assessments represented approximately an additional $53,000 in annual tax revenue for the School District.

### Taxpayer's Appeal to the Trial Court

Taxpayer appealed the increased 2004 assessments, contending in part that the increased assessments were unconstitutional and that the School District's method for selecting properties subject to appeal was arbitrary and capricious. Taxpayer did not challenge the increased fair market value of the properties or the assessment ratio applied. The trial court consolidated the two appeals.

After a prolonged period of quiescence, the parties filed cross-motions

---

1. Taxpayer's properties were potentially under-assessed by approximately $3.8 million. Three other apartment properties were potentially under-assessed in the range of $5,440 to $79,600. Reproduced Record at 62a.

for summary judgment. While the trial court recognized the School District's statutory right to appeal, it concluded that the method used by the School District to select the properties subject to appeal was unconstitutional. The court stated: "Here, the School District chose to challenge the assessment of only one apartment complex despite evidence that other complexes were also under-assessed. This intentional, selective application of the School District's right to appeal violated [Taxpayer's] entitlement to uniform treatment under the law." Trial Ct., Slip Op. at 8. The court relied on *Tredyffrin–Easttown School District v. Valley Forge Music Fair, Inc.*, 156 Pa.Cmwlth. 178, 627 A.2d 814 (1993), to support its decision. The trial court granted Taxpayer's motion for partial summary judgment. This appeal by the School District followed.[2]

## Contentions

On appeal, the School District contends that the trial court erred in concluding that the process it employed in appealing the assessments rendered the increased assessments unconstitutional. In support, it notes our case law recognizing that school districts have a statutory right to appeal an assessment in the same manner, subject to the same procedures and limitations, as individual property owners. It specifically notes that in *In re Springfield School District*, 879 A.2d 335, 341 (Pa. Cmwlth.2005), this Court stated that the statutory provision granting the right of appeal "contains no limits on the process by which school districts decide to appeal. . . . [T]he Law places no restrictions on the 'methodology' employed by a school district or by an individual property owner in determining whether to appeal." Looking to our case law, the School District maintains that an assessment appeal by a taxing entity lacking the power to revise assessment rolls, reassess property or determine assessment ratios, does not constitute deliberate, purposeful discrimination or result in an impermissible spot reassessment.

The School District further maintains that its failure to challenge the assessments of the other apartment complexes is not dispositive: the statutory provision granting the right of appeal does not require a taxing entity to appeal all properties believed to be under-assessed. Moreover, while not engaging in an equal protection analysis, it notes that the other properties identified as possibly under-assessed in the Coyle, Lynch report were only marginally under-assessed compared to Taxpayer's properties.

In response, Taxpayer argues that the School District's exercise of its statutory right to appeal an assessment must be exercised within constitutional constraints. It notes that *Springfield* and its progeny recognize only that an assessment appeal in and of itself is not discriminatory; those cases do not address when an appeal may violate principles of uniformity and equal protection. According to Taxpayer, the facial validity of the process does not shield governmental action from constitu-

---

**2.** The trial court subsequently entered a stipulated order resolving the outstanding issue of refunds and reducing the assessments to those existing prior to the appeal, thereby providing a final, appealable order.

In a tax assessment appeal, our review is limited to determining whether the trial court abused its discretion, whether it committed an error of law or whether its decision was supported by substantial evidence. *Sims v. Berks Cnty. Bd. of Assessment Appeals*, 891 A.2d 816 (Pa.Cmwlth.2006). Moreover, the trial court's findings are entitled to great deference, and its decision will not be disturbed absent clear error. *Hershey Entm't & Resorts Co. v. Dauphin Cnty. Bd. of Assessment Appeals*, 874 A.2d 702 (Pa.Cmwlth.2005).

tional scrutiny. Taxpayer maintains that the School District's method of selecting properties and the subject appeal demonstrate an intentional, selective, discriminatory application of the right of appeal—apartment properties were targeted as a class and the Black Hawk complex was treated differently than other properties in that sub-class—it was the only property subject to an assessment appeal in the entire County, despite evidence that other apartment complexes were under-assessed as well.

### Discussion

■■■■ Taxpayer challenges the application of the statutory right of a taxing district to appeal any assessment within its jurisdiction, under the circumstances of this case. Constitutional challenges are of two kinds: they either assail the statute on its face, or as applied in a particular case. *Lehman v. Pa. State Police*, 576 Pa. 365, 839 A.2d 265 (2003). "[A]n as-applied attack ... does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir.2011) (quoting *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir.2010)); *see also Commonwealth v. Brown*, 26 A.3d 485 (Pa.Super.2011).

■■ A taxpayer alleging that the administration of a tax violates uniformity principles[3] must demonstrate "deliberate, purposeful discrimination in the application of the tax before constitutional safeguards are violated." *In re Penn–Delco Sch. Distr.*, 903 A.2d 600, 605 (Pa.Cmwlth.

2006). We assume without deciding that an appeal by a taxing district from an assessment constitutes the application or enforcement of a tax, so as to implicate uniformity principles. *See Vees v. Carbon Cnty. Bd. of Assessment Appeals*, 867 A.2d 742 (Pa.Cmwlth.2005) (*en banc*).

■■ "When a taxpayer believes that he has been subjected to unequal taxation ... he generally must demonstrate that: (1) the enactment results in some form of classification; and (2) such classification is unreasonable and not rationally related to any legitimate state purpose." *Clifton v. Allegheny Cnty.*, 600 Pa. 662, 685, 969 A.2d 1197, 1211 (2009) (citing *Wilson Partners L.P. v. Bd. of Fin. & Revenue*, 558 Pa. 462, 737 A.2d 1215 (1999)). In the absence of classifications that are "suspect" or "sensitive," or that implicate fundamental or important rights, classifications are subject to the deferential rational basis test. *Id.* at 686, 969 A.2d at 1211 n. 19 (citing *Commonwealth v. Albert*, 563 Pa. 133, 758 A.2d 1149 (2000)).

Significantly, Taxpayer does not contest that its properties were under-assessed, and it does not dispute the increased value assigned to its properties. Instead, it advances the contention that the under-assessment, through which it pays comparatively *less* of the cost of local government, enjoys constitutional protection from School District's appeal. Not only does this position lack a common-sense allure, but it also lacks factual and legal support.

Factually, Taxpayer's properties were the *only* potentially under-assessed properties recommended by an outside consul-

3. The Uniformity Clause, found in Article VIII, Section I of the Pennsylvania Constitution, provides: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under

general laws." PA. CONST. art. VIII, § 1. The Equal Protection Clause of the United States Constitution directs that no state shall "deny to any person ... the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

tant for appeal by the School District. R.R. at 35a, 62a. This was because of the size of the potential under-assessment. See R.R. at 62a. Given this recommendation, it is difficult to give much weight to Taxpayer's "arbitrary and capricious selection" argument. However, it is easy to envision a rational basis for the School District taking these appeals: sufficient increased revenue to justify the costs of appeals. Judicious use of resources to legally increase revenue is a legitimate governmental purpose.

Additionally, the School District proved that Taxpayer's properties were in fact under-assessed. Taxpayer, however, did not prove that any other property within the School District's jurisdiction (or anywhere else in Chester County) was in fact under-assessed. Thus, Taxpayer failed to prove that other properties were situated similarly to its properties.

■ As a related but distinct matter, "in uniformity litigation, the aggrieved taxpayer must first establish the various valuations at issue, and then demonstrate how the disparate ratios of assessed-to-market value violate the uniformity requirement." Clifton, 600 Pa. at 691, 969 A.2d at 1214. Here, Taxpayer did not make the required proof.

Finally, we reject as misleading Taxpayer's repeated assertions that it owns the only property in Chester County subject to a tax assessment appeal in 2004. The School District does not have the authority to appeal assessments beyond its jurisdiction throughout the County. Rather, the School District is confined to properties within its jurisdiction. That there may have been other potentially under-assessed properties elsewhere where no appeal was filed by a different taxing district has no

bearing on whether the School District intentionally discriminated against Taxpayer.

Legally, Taxpayer's position finds no support on the face of the statutory provision, which unambiguously provided for the right of a taxing district "aggrieved by any assessment of property ... to appeal therefrom...." Former Section 18 of the statute known as the Second Class A and Third Class County Assessments Law (emphasis added).[4] Clearly, the statute created no classes, nor did it limit the taxing district's right of appeal.

Furthermore, careful consideration of Taxpayer's constitutional arguments leads to the conclusion that they lack merit. Our Supreme Court consistently interprets the Uniformity Clause as precluding real property from being divided into different classes for purposes of systematic assessment: "The [Pennsylvania Constitution] [requires] all real estate to be treated as a single class entitled to uniform treatment." Clifton, 600 Pa. at 686–87, 969 A.2d at 1212. Moreover, while the Court has held that Equal Protection and Uniformity claims pertaining to matters of taxation are analyzed coterminously, the Court has recognized that the U.S. Constitution does not require equalization across all potential subclassifications of real property, noting that federal standards contemplate that similarly situated taxpayers should not be deliberately treated differently by tax authorities. Downingtown Area Sch. Dist. v. Chester Cnty. Bd. of Assessment Appeals, 590 Pa. 459, 913 A.2d 194 (2006). Thus, while noting that real property cannot be subdivided into classes for purposes of assessment and taxation, the Court held that meaningful subclassifications can be considered as a "component of the overall evaluation of uniform treatment in the ap-

4. Act of June 9, 1931, P.L. 1379, as amended, 72 P.S. § 5350i, repealed and replaced by the Consolidated County Assessment Law, 53 Pa. C.S. § 8855.

plication of the taxation scheme.... [To do otherwise] would represent an impermissible departure from federal equal protection jurisprudence ..." *Id.* at 469, 913 A.2d at 200.

Taxpayer criticizes the School District for participating in a process by which only apartment complexes were evaluated, thus creating a sub-class of property subject to different treatment. Taxpayer, however, mischaracterizes the record.

The Chester County School District Managers, in which the School District participated, was involved in a longer-term process which involved rotating evaluations of many classes of property. Thus, "[t]here was a discussion at the Business Managers' meeting that we would systematically go through the classes, if you will, of properties in Chester County." R.R. at 34a. The group hired a consultant to evaluate a different class each year, one year looking at shopping centers, then apartment complexes, with other evaluations expected each year in the future. *Id.* This unrebutted testimony allows us to envision a rational basis for the School District's participation in a process which would systematically evaluate all the classes of property over a reasonable period of time. Such measured action does not offend uniformity or equal protection precepts.

At the time of the assessment appeals, the parties here were governed by former 72 P.S. § 5350i (part of the provisions governing assessments in counties of the Second Class A and Third Class)[5] which provided, with emphasis added:

> The corporate authorities of any borough, town, township, school ... who may feel aggrieved by *any assessment of property* ... shall have the right to appeal therefrom in entirety or by individual assessments in the same manner, subject to the same procedure, and with like effect as if such appeal were taken by a taxable with respect to his assessment....

Pursuant to the above and similar statutory provisions, it is now well settled that municipal tax authorities, such as school districts, may appeal a property's assessment. *Clifton,* 600 Pa. at 689, 969 A.2d at 1213 n. 23 (citing *Downingtown; Penn–Delco; Springfield; Vees* ). This Court rejects claims that an assessment appeal lodged by a school district constitutes an illegal spot assessment or results in a violation of the Uniformity Clause. *See generally Penn–Delco; Vees; Millcreek Twp. Sch. Dist. v. Erie Cnty. Bd. of Assessment Appeals,* 737 A.2d 335 (Pa.Cmwlth.1999). Both *Vees* and *Springfield* are instructive here.

In *Vees,* the school district successfully challenged the assessment of an unimproved parcel of property. On appeal to the trial court, taxpayers argued that the assessment was discriminatory and violated both the Uniformity and Equal Protec-

---

5. The act commonly referred to as the Second Class A and Third Class County Assessments Law, 72 P.S. §§ 5342–5350k, was repealed in 2010 and replaced by the Consolidated County Assessment Law, which became effective January 1, 2011. The current provision in that Act granting school districts the right to appeal is found at 53 Pa.C.S. § 8855, which states, with emphasis added:

> A taxing district shall have the right to appeal *any assessment* within its jurisdiction in the same manner, subject to the same procedure and with like effect as if the appeal were taken by a taxable person with respect to the assessment, and, in addition, may take an appeal from any decision of the board or court of common pleas as though it had been a party to the proceedings before the board or court even though it was not a party in fact. A taxing district authority may intervene in any appeal by a taxable person under section 8854 (relating to appeals to court) as a matter of right.

tion Clauses. In litigating their case, the taxpayers offered to prove that the school district had a policy to initiate an appeal where a purchase price exceeded the current assessed value by a specified amount ($15,000) and that it sought to correct "economic valuation problems" through its assessment appeals. *Vees*, 867 A.2d at 745. The evidence was excluded based upon relevance. The trial court ultimately affirmed the board's assessment.

On appeal to this court, taxpayers argued that the trial court erred in excluding evidence regarding the school district's general appeals strategy and intent in pursuing assessment appeals. This Court concluded that no abuse of discretion occurred in excluding the proffered evidence, under the circumstances of that case. We also held that filing a selective appeal based upon a perception that property was undervalued does not constitute deliberate and purposeful discrimination. Noting that the trial court made no findings regarding deliberate, purposeful discrimination, we affirmed.

In *Springfield*, the evidence demonstrated that the school district compared samples of pre-county-wide assessment values and tax levels with post-county-wide assessment values and levels for residential and commercial properties. The school district concluded that some discrepancies existed with commercial properties. The properties with the largest percentage value decrease after reassessment were referred to the solicitor and an appraiser for further evaluation. As a result, almost all assessment appeals by the school district

involved commercial properties. The trial court denied two assessment appeals by the school district that involved commercial properties, concluding in pertinent part that the school district's methodology of selecting properties to appeal was arbitrary and capricious as well as discriminatory because the focus was primarily upon commercial properties.

This Court disagreed on appeal, specifically noting that the trial court's findings of purposeful discrimination did not command the conclusion that unlawful discrimination occurred. In concluding that the school district's assessment appeal was not defective, we noted that the school district was statutorily empowered to challenge assessments through the appeal process, that statutory authority contained no limitations on the process employed in deciding to pursue an appeal, and the appeal was not initiated by an entity with the power and authority to revise assessments and change the value of property.

Based upon the above authority,[6] we conclude the respected trial court fell into error in concluding that the School District's decision to appeal only Taxpayer's assessments constituted deliberate, purposeful discrimination in violation of the Uniformity Clause. Here, as in the cases discussed above, the School District is expressly authorized to initiate assessment appeals, and it is not an entity clothed with the power to revise assessments or assessment ratios, such that lodging an appeal constitutes an impermissible spot reassessment. Moreover, as both *Vees* and *Springfield* demonstrate, adopting a meth-

---

**6.** In addition to *In re Penn–Delco School District*, 903 A.2d 600 (Pa.Cmwlth.2006), *In re Springfield School District*, 879 A.2d 335 (Pa. Cmwlth.2005), *Vees v. Carbon County Board of Assessment Appeals*, 867 A.2d 742 (Pa. Cmwlth.2005) (*en banc*), and *Millcreek Township School District v. Erie County Board of Assessment Appeals*, 737 A.2d 335 (Pa.

Cmwlth.1999), there is also a similar, unreported holding from this Court on consolidated appeals, *Allar v. Blue Mountain School District, Schuylkill County Board of Assessment Appeals*, 12 A.3d 498 (Pa.Cmwlth., Nos. 162, 676, 677, 678, 711, 826, 887, 908, 1140 C.D. 2010, filed January 11, 2011) (unreported).

odology that narrows the class of properties evaluated for appeal based upon considerations such as financial and economic thresholds or by classifications of property do not as a matter of law demonstrate deliberate, purposeful discrimination.

As a final legal point, the trial court's reliance on *Valley Forge Music* Fair is problematic. There, a school district enacted a resolution imposing a tax on all admission charges to amusements; the amusement operator was charged with collecting and remitting the tax. The Music Fair challenged the resolution on various grounds, including that the district did not enforce the tax on other amusement entities and liberally compromised tax arrearages in favor of other entities in violation of the Equal Protection and Uniformity Clauses. Based upon evidence demonstrating that the school district failed to enforce the tax against some amusements, liberally compromised tax liabilities of other amusement entities, and promptly pursued the Music Fair when it failed to remit taxes while permitting other businesses to violate the resolution for years without repercussion, the trial court concluded that the district intentionally, systematically and selectively enforced the resolution in violation of the constitutional provisions.

While this Court ultimately affirmed in part and reversed in part, it affirmed the conclusion that the school district's unequal and selective enforcement of the tax provision violated principles of uniformity and equal protection. In doing so, it noted that in order to establish a denial of equal protection in the application of a tax statute, "there should be something that amounts to an intention, or the equivalent of fraudulent purpose, to disregard the fundamental principle of uniformity.... Such discrimination can be demonstrated by showing systematic unequal enforcement of a tax statute." *Valley Forge Mu-*

*sic Fair,* 627 A.2d at 820 (citations omitted).

*Valley Forge Music Fair* is inapposite both procedurally and factually. The school district there was administering and enforcing its own tax rather than seeking to challenge an assessed value imposed by another entity. Furthermore, all amusements presumably fell within the ambit of the provision, rendering the failure to enforce the provision equally against all entities wrongful and in contravention of constitutional provisions. The School District here, however, is not required by statute to challenge every assessment.

Also, there is no similarity of conduct between the school district in *Valley Forge Music Fair* and the School District here. The school district's conduct was flagrantly discriminatory in *Valley Forge Music Fair.* Here, the School District pursued an appeal based on the recommendation of an outside consultant, armed with evidence that Taxpayer's properties were in fact substantially undervalued. The School District prevailed. *See Springfield,* 879 A.2d at 341 ("It is not discrimination to appeal an incorrect assessment.").

At argument, counsel for Taxpayer candidly admitted that our prior decisions are "a problem" for his client's position. Counsel for the School District went further and asserted we must overrule our prior decisions in order to affirm the trial court. We are not inclined to overrule our prior decisions. Accordingly, we reverse, thereby reinstating the orders of the Board on Taxpayer's two properties.

### *ORDER*

**AND NOW,** this 8th day of March, 2013, the order of the Court of Common Pleas of Chester County is **REVERSED.** As a result, the orders of the Chester County Board of Assessment Appeals with mailing

dates of October 30, 2003, concerning the assessed values for tax bills issued in 2004 for the parcels 11–05–0039.1500 and 11–05–0040.0000 are **REINSTATED.**

### DISSENTING OPINION BY Judge LEAVITT.

The apartment complex owned by Guntram Weissenberger, d/b/a Black Hawk Circle Apartments (Black Hawk), was the only apartment complex in Chester County whose real estate assessment was challenged by the Downingtown Area School District (School District). Other similar apartment complexes within Chester County and within the School District were not targeted for an assessment appeal. As a consequence, Black Hawk's assessment value is higher than similarly situated apartment complexes in the county. I believe this violates the Uniformity Clause of the Pennsylvania Constitution and, therefore, I respectfully dissent.

The School District singled out Black Hawk because it provides a larger portion of the cost of local government than the other under-assessed commercial apartment properties in the School District. Black Hawk's competitors in Chester County continue to be under-assessed.

The Uniformity Clause states that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." PA. CONST. art. VIII, § 1. The governing language of the Second Class A and Third Class County Assessment Law provides, in relevant part, as follows:

> The corporate authorities of any borough, town, township, school … who may feel aggrieved by any assessment of property … shall have the right to appeal therefrom in entirety or by individual assessments in the same manner, subject to the same procedure, and with

like effect as if such appeal were taken by a [taxpayer] with respect to his assessment . . . .

Act of June 26, 1931, P.L. 1379, *as amended,* 72 P.S. § 5350i, *repealed and replaced by* 53 Pa.C.S. § 8855. A municipal tax authority, such as a school district, may appeal a property's assessment, but that right does not relieve the tax authority of the constitutional constraints of the Uniformity Clause. Stated another way, the School District may not exempt itself "from the prevailing requirement that similarly situated taxpayers should not be deliberately treated differently by taxing authorities." *Downingtown Area School District v. Chester County Board of Assessment Appeals,* 590 Pa. 459, 470, 913 A.2d 194, 201 (2006). "Deliberate," in this context, "does not exclusively connote wrongful context, but also includes *any intentional or systematic method of enforcement of tax laws.*" *Id.* at 470 n. 10, 913 A.2d at 201 n. 10 (emphasis added).

Here, there has been an intentional and systematic enforcement of tax laws that treats similarly situated taxpayers differently. The general principle that underlies the Uniformity Clause is that "taxpayers should pay no more or less than their proportionate share of government." *Id.* at 466, 913 A.2d at 199 (citing *Deitch Co. v. Board of Property Assessment, Appeals & Review of Allegheny County,* 417 Pa. 213, 220, 209 A.2d 397, 401 (1965)). *See generally Delaware, L. & W.R. Co.'s Tax Assessment,* 224 Pa. 240, 243, 73 A. 429, 430 (1909) ("While every tax is a burden, it is more cheerfully borne when the citizen feels that he is only required to bear his proportionate share of that burden measured by the value of his property to that of his neighbor. This is not an idle thought in the mind of the taxpayer, nor is it mere speculative theory advocated by learned writers on the subject; but it is a funda-

mental principle written into the Constitutions and statutes of almost every state in this country.").

Black Hawk has an assessment that exceeds those of the other apartment complexes located in the same School District and county that continue to enjoy an under-assessment. This places Black Hawk at a competitive disadvantage and is the precise result prohibited by the Uniformity Clause. I would affirm the trial court.