Valley Forge Towers Apartments N,  :
LP; Morgan Properties Abrams Run  :
Owner LP; KBF Associates, LP; Gulph  :
Mills Village Apartments LP; and  :
The Lafayette at Valley Forge LP,  :
                         Appellants  :
  :
           v.                   :
  :
Upper Merion Area School District  :   No. 1960 C.D. 2014
and Keystone Realty Advisors, LLC  :   Argued: May 8, 2015


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY                        FILED: September 10, 2015


       Morgan Properties Abrams Run Owner LP, KBF Associates, LP, Gulph Mills Village Apartments LP and The Lafayette at Valley Forge LP (collectively, Taxpayers)[1] appeal from the Montgomery County Common Pleas Court's (trial court) October 9, 2014 order sustaining Upper Merion Area School District's (UMASD) and Keystone Realty Advisors, LLC's (Keystone Realty) (collectively, District) preliminary objections to Taxpayers' complaint seeking a declaratory judgment, injunctive relief and damages (Complaint).  There are three issues before the Court: (1) whether Taxpayers stated a claim for which relief could be granted when they alleged that the District violated Article 8, Section 1 of the Pennsylvania Constitution

---

[1] Valley Forge Towers Apartments N, LP (Valley Forge Towers) was originally a named plaintiff in the action; however, the parties discontinued the action as to Valley Forge Towers.  By July 7, 2015 order this Court granted the parties joint motion for leave to discontinue the action as to Gulph Mills Village Apartments LP and The Lafayette at Valley Forge LP, and discontinued the action as to Gulph Mills Village Apartments LP and The Lafayette at Valley Forge LP.

(Uniformity Clause) by evaluating and filing assessment appeals only against the Taxpayers and similar commercial properties; (2) whether administrative exhaustion principles prevent Taxpayers from bringing their Uniformity Clause challenge as an independent equity action, rather than in separate assessment appeals; and (3) whether Taxpayers alleged a proper negligence claim against Keystone Realty. After review, we affirm.

Taxpayers own apartment buildings in UMASD. UMASD filed annual assessment appeals with the Montgomery County Board of Assessment Appeals (Board) challenging the assessments of Taxpayers' properties. The Board denied the appeals and UMASD appealed to the trial court. The appeals remain pending before the trial court.

On May 2, 2014, Taxpayers filed their Complaint. Taxpayers allege in the Complaint that UMASD contracted with Keystone Realty to recommend property assessments from which UMASD should appeal. Taxpayers further contend that, as a result of Keystone Realty's recommendations, UMASD systematically selected and appealed from commercial property assessments, including apartment buildings, but did not appeal from residential property assessments. Finally, Taxpayers aver that UMASD's actions were part of a scheme between UMASD and Keystone Realty to generate more tax revenue for UMASD which, in turn, would benefit Keystone Realty, since it was paid a contingency fee of 25% of any increased revenue it generated for UMASD. Taxpayers claim that UMASD's appeals solely of commercial properties violated the Uniformity Clause.

On May 28, 2014, the District filed its preliminary objections to the Complaint to which Taxpayers responded on June 24, 2014. The trial court heard argument on October 3, 2014, and sustained the preliminary objections by October 9,

2

2014 order, thereby dismissing the Complaint with prejudice. Taxpayers appealed to this Court.[2]

### Pennsylvania Constitution's Uniformity Clause

Taxpayers first argue that UMASD's selective assessment appeals violate the Pennsylvania Constitution's Uniformity Clause. Specifically, they contend that "the [District] has concocted a scheme to ensure that commercial properties, such as the [Taxpayers'] apartment buildings, are assessed at a higher ratio to their fair market value than residential properties." Taxpayers' Br. at 13. The District rejoins that Taxpayers have failed to establish a lack of uniformity or that UMASD has acted in an unconstitutional manner. The District, *inter alia*, cites *Weissenberger v. Chester County Board of Assessment Appeals,* 62 A.3d 501 (Pa. Cmwlth. 2013) to support its position.

The Pennsylvania Constitution's Uniformity Clause provides: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. VIII, § 1. Section 8855 of the Consolidated County Assessment Law (Law) states in relevant part:

> A taxing district shall have the right to appeal any assessment within its jurisdiction in the same manner, subject to the same procedure and with like effect as if the

---

[2] Our scope of review of an appeal from an order sustaining preliminary objections and dismissing a complaint is to determine whether the trial court committed legal error. When considering preliminary objections, we must accept as true all well-pled facts set forth in the complaint, as well as all inferences reasonably deducible therefrom, but not conclusions of law. Preliminary objections in the nature of a demurrer should be sustained only where the pleadings are clearly insufficient to establish a right to relief and any doubt must be resolved in favor of overruling the demurrer.

*Dadds v. Walters*, 924 A.2d 740, 742 (Pa. Cmwlth. 2007) (citations omitted).

appeal were taken by a taxable person with respect to the assessment, and, in addition, may take an appeal from any decision of the board or court of common pleas as though it had been a party to the proceedings before the board or court even though it was not a party in fact.

53 Pa.C.S. § 8855. "[I]t is now well settled that municipal tax authorities, such as school districts, may appeal a property's assessment." *Weissenberger,* 62 A.3d at 507.

## **Improper Classification**

Taxpayers assert that the trial court erred in relying on *In re Springfield School District*, 101 A.3d 835 (Pa. Cmwlth. 2014) (*Springfield II*), because the *Springfield* Court misinterpreted the Pennsylvania Supreme Court's decision in *Downingtown Area School District v. Chester County Board of Assessment Appeals*, 913 A.2d 194 (Pa. 2006). In *Downingtown* the Supreme Court held that "the Uniformity Clause does not require equalization across all sub-classifications of real property." Trial Ct. Op. at 7. Taxpayers maintain that the *Downingtown* Court was merely distinguishing the United States (U.S.) Constitution's Equal Protection Clause from the Pennsylvania Constitution's Uniformity Clause. However, this Court in *Weissenberger* explained the significance of the *Downingtown* holding in relation to the Pennsylvania Constitution's Uniformity Clause. The *Weissenberger* Court explained:

> Our Supreme Court consistently interprets the Uniformity Clause as precluding real property from being divided into different classes for purposes of systematic assessment: 'The [Pennsylvania Constitution] [requires] all real estate to be treated as a single class entitled to uniform treatment.' *Clifton* [*v. Allegheny Cnty.*], . . . 969 A.2d [1197,] 1212 [(Pa. 2009)]. Moreover, while the Court has held that Equal Protection and Uniformity claims pertaining to matters of taxation are analyzed coterminously, the Court has recognized that the U.S. Constitution does not require

4

equalization across all potential subclassifications of real property, noting that federal standards contemplate that *similarly situated* taxpayers should not be deliberately treated differently by tax authorities. *Downingtown* . . . . Thus, **while noting that real property cannot be subdivided into classes for purposes of assessment and taxation, the Court held that meaningful subclassifications can be considered as a 'component of the overall evaluation of uniform treatment in the application of the taxation scheme. . . . [To do otherwise] would represent an impermissible departure from federal equal protection jurisprudence** . . . [.]' *Id. .  . .* at 200.

*Weissenberger*, 62 A.3d at 506-07 (emphasis added).  The Court concluded:

[A] [s]chool [d]istrict is expressly authorized to initiate assessment appeals, and it is not an entity clothed with the power to revise assessments or assessment ratios, such that lodging an appeal constitutes an impermissible spot reassessment. Moreover, . . . **adopting a methodology that narrows the class of properties evaluated for appeal based upon considerations such as financial and economic thresholds or by classifications of property do not as a matter of law demonstrate deliberate, purposeful discrimination.**

*Id.* at 508-09 (emphasis added).  Thus, we hold that the *Springfield II* Court did not misinterpret *Downingtown*, and the trial court properly relied thereon.


### Deliberate Discrimination

Taxpayers further declare that the UMASD selected its properties based on their owners' lack of political power, and thereby deliberately discriminated against an underrepresented group violating uniformity. *See Downingtown.*  We acknowledge that Taxpayers alleged in their Complaint: "On information and belief, [UMASD] has failed to appeal the assessments of single family homes **because many if not all are owned by residents who vote in local elections** and it would be politically unpopular to appeal such voters' property assessments."  Complaint ¶53;

5

Reproduced Record (R.R.) at 16a (emphasis added). However, Taxpayers also alleged:

48. Upon information and belief, pursuant to the contract between the School Board and Keystone [Realty], the School Board agreed to pay Keystone [Realty] a contingency fee of 25% of any increased tax revenue [UMASD] generates through a Keystone [Realty]-assisted appeal.

49. This contingency fee arrangement creates for Keystone [Realty] **an economic interest in recommending that [UMASD] target for appeal high-value properties**, in disregard of the requirements of the Uniformity Clause.

50. This interest creates a direct conflict between Keystone [Realty]'s interest in maximizing its contingency fee and [UMASD's] obligations to abide by the Uniformity Clause. For example, rather than selecting properties for appeal to further uniformity and ensure that no taxpayer pays more or less than its proportionate share of the cost of government, **this arrangement rewards targeting for appeal larger, higher value commercial properties** and not appealing lower value, lower assessed single family homes.

51. In fact, with the assistance of Keystone [Realty], [UMASD] has embarked on precisely such an unconstitutional assessment appeal scheme. Rather than appeal the assessments of real properties with assessment-to-market value ratios that are substantially lower than the common-level ratio, which would further uniformity, [UMASD], upon information and belief based on recommendations of Keystone [Realty], has (a) failed to appeal the assessments of any single family homes; and (b) **systematically appealed the assessments of commercial properties, including multi-family apartment buildings, with values and assessment-to-market ratios substantially greater than the single family home assessments** not being appealed.

R.R. at 14a-15a (emphasis added). "In reviewing preliminary objections, all material facts averred in the complaint, and all reasonable inferences that can be drawn from them, are admitted as true. However, a court need not accept as true conclusions of

6

law, unwarranted inferences, argumentative allegations, or expressions of opinion." *Seitel Data, Ltd. v. Ctr. Twp.*, 92 A.3d 851, 859 (Pa. Cmwlth. 2014) (citations omitted).  Our Supreme Court has held:

> 'When a taxpayer believes that he has been subjected to unequal taxation . . . he generally must demonstrate that: (1) the enactment results in some form of classification; and (2) such classification is unreasonable and not rationally related to any legitimate state purpose.' *Clifton v. Allegheny Cnty.,* . . . 969 A.2d 1197, 1211 ([Pa.] 2009) (citing *Wilson Partners L.P. v. Bd. of Fin. & Revenue,* . . . 737 A.2d 1215 ([Pa.] 1999)).  In the absence of classifications that are 'suspect' or 'sensitive,' or that implicate fundamental or important rights, **classifications are subject to the deferential rational basis test**. *Id.* . . . at 1211 n.[]19 (emphasis added) (citing *Commonwealth v. Albert,* . . . 758 A.2d 1149 ([Pa.] 2000)).

*Weissenberger*, 62 A.3d at 506 (emphasis added).  Because Taxpayers expressly alleged that the District was targeting high value properties for the purpose of increasing revenue, "it is easy to envision a **rational basis** for [UMASD] taking these appeals: sufficient increased revenue to justify the costs of appeals.  Judicious use of resources to legally increase revenue is a legitimate governmental purpose."  *Id.* Taxpayers did not allege that UMASD selected Taxpayers' properties based on their owners' lack of political power.  Accordingly, UMASD's selection of Taxpayers' properties did not deliberately discriminate against an underrepresented group violating uniformity. *Id.*

### Trial Court's Relied-Upon Cases

Finally, Taxpayers maintain the trial court relied upon cases that do not support its decision because the cases do not provide taxing districts a wholly unfettered right of appeal and each case is distinguishable from the facts alleged

7

herein. Specifically, Taxpayers claim that the trial court erred in citing *Vees v. Carbon County Board of Assessment Appeals*, 867 A.2d 742 (Pa. Cmwlth. 2005), and *Springfield II* to support a school district's unfettered right to appeal from tax assessments; and in relying on *Vees*, *In re Springfield School District*, 879 A.2d 335 (Pa. Cmwlth. 2005) (*Springfield I*), *Weissenberger* and *Springfield II* because those cases involved and were determined on facts that are not present herein.

First, the trial court did not rely on any of the above cases in dismissing Counts I (Injunctive Relief – UMASD), III (Injunctive relief-Keystone Realty) and IV (Declaratory Judgment-the District) of the Complaint.[3] Rather, the trial court granted the District's preliminary objections because Complaint Counts I, III and IV do not state a cause of action. The trial court opined:

> [Taxpayers] allege that [the District] ha[s] violated the Uniformity [C]lause of the Pennsylvania Constitution, which provides, inter alia, that 'all taxes shall be []uniform, upon the same class of subjects . . . .' PA. CONST. art. VIII, § I. However, there is no allegation in the Complaint that the taxes imposed by UMASD violate the Uniformity Clause of the Pennsylvania Constitution. Likewise, there is no allegation that the school district's millage, which is part of the overall real estate taxes, applies unequally to all assessed properties in the school district.
>
> The [Law] specifically provides that a taxing authority has the right to appeal the assessment of any property to the Court of Common Pleas. Simply stated, [Taxpayers'] claims concerning inequality in tax assessments and lack of uniformity do not state an independent cause of action against a school district since school districts do not set tax assessments. The [Board] has exclusive jurisdiction of tax assessments.
>
> Furthermore, this case has not been certified as a class action. [Taxpayers] state in Paragraph 3 of the Complaint that this action is a 'first-of-its kind in the Commonwealth .

---

[3] Count II (Negligence-Keystone Realty) will be discussed below.

8

. . .' (Compl. ¶[]3). [Taxpayers] have no statutory or case authority to support their unprecedented assertion that there is a legal basis for an independent action seeking to enjoin a school district from exercising its right to appeal tax assessments due to an alleged inequality of tax assessments and a lack of uniformity. [Taxpayers] are seeking to avoid the statutory procedures established for the adjudication of tax assessment appeals. Issues concerning lack of uniformity can be properly raised in the tax assessment appeals where the county, township, school district, and board of assessment appeals are parties in the case.

Trial Ct. Op. at 3-4. This Court discerns no error in the trial court's reasoning. Taxpayers have no basis for bringing a lawsuit against the UMASD for assessing taxes against Taxpayers in violation of the Pennsylvania Constitution's Uniformity Clause when in fact UMASD was not assessing taxes, but rather exercising its statutory right to appeal from said assessments. In citing the cases that Taxpayers maintain are inapposite, the trial court was merely reciting the law that when the issue of appealing from tax assessments in violation of the Pennsylvania Constitution's Uniformity Clause has been raised during the litigation of the assessment appeal, the courts have held that the school district's actions did not violate the Pennsylvania Constitution's Uniformity Clause.

Taxpayers contend that the trial court erred in relying on *Vees* and *Springfield II* to support a school district's unfettered right to appeal from tax assessments because the *Downingtown* Court held that a "classification [] **not based on any legitimate distinction** between the targeted and non-targeted properties, [] is arbitrary, and thus, unconstitutional." *Id.* at 205 (emphasis added). However, the trial court did not cite the above cases for the proposition that a school district's right to appeal from assessments is absolute. Rather, it relied upon them for the proposition that where, as here, the school district has **reasonable and financial considerations of increasing its revenue**, the methods for identifying properties is not arbitrary, capricious or discriminatory.

9

Further, the distinctions Taxpayers seek to make in the above-cited cases are belied by the Complaint's allegations. For example, Taxpayers aver that *Weissenberger* does not apply because "[i]n *Weissenberger*, the school district selected certain apartment properties for assessment appeals based on a consultant's review of all apartment complexes in the district." Taxpayers' Br. at 27. "In other cases, this Court has approved selection methodologies based on the difference between sale prices and imputed fair market values of properties in the district." *Id.* Taxpayers maintain that

> the record contains **no evidence that [UMASD] used any methodology for selecting properties** for appeal. Rather, as alleged in the Complaint, [UMASD] retained Keystone [Realty] to **recommend commercial properties**, such as the [Taxpayers'] apartment buildings, for appeals. The [District is] not using any criteria. None of this Court's prior cases have approved discrimination without any selection criteria for choosing properties for assessment appeals.

*Id.* at 28 (citation omitted; emphasis added). Taxpayers conclude that

> although in some of the earlier cases this Court found no deliberate discrimination because the taxing districts acted from an economic motivation, that has no bearing on this case. . . . [T]he [District] did not have any rational basis for choosing **only commercial properties** for appeal; they did so based on the **nature of the property and the owners' political power**, in violation of the Uniformity Clause.

*Id.* at 32.

However, Taxpayers expressly alleged:

47. At a meeting of the School Board on June 5, 2011, the [UMASD], through its Board, voted to hire Keystone [Realty] to target **properties** for [UMASD] appeals.

48. Upon information and belief, pursuant to the contract between the School Board and Keystone [Realty], the School Board agreed to pay Keystone [Realty] a contingency fee of 25% of any **increased tax revenue** the

10

School District generates through a Keystone [Realty]-assisted appeal.

49. This contingency fee arrangement creates for Keystone [Realty] an **economic interest** in recommending that [UMASD] target for appeal **high-value properties**, in disregard of the requirements of the Uniformity Clause.

R.R. at 15a (emphasis added). There is no allegation that UMASD requested Keystone Realty to seek **only apartment complexes or properties owned by non-residential voters**. To the contrary, based on Taxpayers' allegations, which we must accept as true, **increased tax revenue** is the motivation behind the consulting contract, and **high value properties** were the target. Thus, as Taxpayers' allegations do not support their purported distinctions, the cases the trial court cited are controlling.

## Exhaustion of Administrative Remedies

Taxpayers next argue that the trial court erred in dismissing their claims on the basis of the administrative exhaustion of remedies doctrine. Specifically, Taxpayers contend that Pennsylvania case law demonstrates that Taxpayers were not required to pursue their Uniformity Clause challenge in tax assessment appeals, but instead could bring it as a separate equity action. Taxpayers further assert that individual assessment appeals cannot address Taxpayers' constitutional challenge and an equity action provides a preferable vehicle for their claims. The District rejoins that the remedies set forth in the Law are the mandatory and exclusive remedies to raise in assessment appeal matters.

Section 8854 of the Law provides in relevant part:

**(a) Court of common pleas.--**

(1) Following an appeal to the board, any appellant, property owner *or affected taxing district may appeal the board's decision to the court of common pleas* in the county in which the property is located in accordance with

11

42 Pa.C.S. § 5571(b) (relating to appeals generally) and local rules of court.

(2) In any appeal of an assessment the court shall make the following determinations:

(i) The market value as of the date the appeal was filed before the board. In the event subsequent years have been made a part of the appeal, the court shall determine the market value for each year.

(ii) The common level ratio which was applicable in the original appeal to the board. In the event subsequent years have been made a part of the appeal, the court shall determine the applicable common level ratio for each year published by the State Tax Equalization Board on or before July 1 of the year prior to the tax year being appealed.

. . . .

(6) In any appeal by a taxable person from an action by the board, the board shall have the power and duty to present a prima facie case in support of its assessment, to cross-examine witnesses, to discredit or impeach any evidence presented by the taxable person, to prosecute or defend an appeal in any appellate court and to take any other necessary steps to defend its valuation and assessment.

. . . .

(9) *Nothing in this subsection shall*:

(i) Prevent an appellant from appealing a base-year valuation without reference to ratio.

(ii) *Be construed to abridge, alter or limit the right of an appellant to assert a challenge under* [*S*]*ection 1 of Article VIII of the Constitution of Pennsylvania* [*the Uniformity Clause*]*.*

(b) **Appeals to Commonwealth Court or Supreme Court.**--The board, or any party to the appeal to the court of common pleas, may appeal from the judgment, order or decree of the court of common pleas.

53 Pa.C.S. § 8854 (double emphasis added). Here, UMASD filed appeals from Taxpayers' properties' assessments to the Board. The Board denied the assessment appeals from which UMASD appealed to the trial court and which are currently pending in the trial court. Taxpayers in their Answers and New Matter raised the Uniformity Clause issue as they were permitted to do by statute.

Moreover, our Supreme Court has held that in order to obtain equity jurisdiction, taxpayers must: (1) raise a **substantial** constitutional issue, **and** (2) lack an adequate remedy through the administrative appeal process. *Beattie v. Allegheny Cnty.*, 907 A.2d 519 (Pa. 2006). Although the *Beattie* Court acknowledged that a substantial constitutional question historically exists in a facial challenge to the relevant taxing statute, the Court held that it could also be based solely upon the manner in which the governing taxing statute is applied. *Id.*

Here, however, Taxpayers have not raised a constitutional challenge to a taxing statute, ordinance or the application thereof. Rather, Taxpayers are challenging UMASD's right to appeal tax assessments. Thus, Taxpayers cannot meet the first requirement. It should be noted that Taxpayers did not raise a constitutional challenge to the assessment appeals statute. As explained above, while UMASD's right to appeal assessments is not unfettered, the case law establishes that where, as here, a school district has reasonable and financial considerations of increasing its revenue, their actions do not violate the Uniformity Clause. *Weissenberger.* It is the existence of a substantial question of constitutionality, not the mere allegation thereof, that is required.[4] *Beattie*; *Kowenhoven v. Allegheny Cnty.,* 901 A.2d 1003 (Pa. 2006); *Rochester & Pittsburgh Coal Co. v. Bd. of Assessment & Revision of*

---

[4] Preliminary objections are before us. However, as explained above, the Complaint does not support the existence of a substantial constitutional question as the allegations do not establish that UMASD deliberately discriminated against an underrepresented group. Had Taxpayers' allegations supported this averred conclusion, further inquiry would have been required.

*Taxes of Indiana Cnty.*, 266 A.2d 78 (Pa. 1970). Accordingly, the trial court properly dismissed Taxpayers' Complaint.

## Negligence

### Duty

Lastly, Taxpayers argue that the trial court improperly dismissed their negligence claim because Keystone Realty owed Taxpayers a duty. The District rejoins that Keystone Realty owed no duty of care to Taxpayers; thus, no negligence cause of action exists.

Essentially, both parties agree that *Althaus v. Cohen*, 756 A.2d 1166 (Pa. 2000) is the controlling law on this issue.[5] Our Supreme Court in *Althaus* held that "[t]he primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff." *Id.* at 1168. The Court explained that

> [t]he determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

*Id.* at 1169.[6] Concerning the first duty factor, Taxpayers assert that although there is no contract between the parties there is a relationship based on the analysis in *Sharpe v. St. Luke's Hospital*, 821 A.2d 1215 (Pa. 2003). In *Sharpe,* Federal Express had a contract with St. Luke's Hospital (St. Luke's) for drug testing its employees. Sharpe, a Federal Express employee, sued St. Luke's for its negligence in handling her test sample leading to a false positive result for cocaine. The *Sharpe* Court found that St.

---

[5] Both parties cited cases which quote *Althaus* to support their respective positions.

[6] We will summarize the parties' arguments concerning each factor before addressing whether a duty exists.

14

Luke's owed a duty of care to the employee notwithstanding that she did not have a contract with St. Luke's. The *Sharpe* Court held: "Specifically, [the employee] personally presented herself to [St. Luke's], which was aware of the purpose of the urine screening; [St. Luke's], in turn, should have realized that any negligence with respect to the handling of the specimen could harm Sharpe's employment." *Id.* at 1219.

The District relies on *Wisniski v. Brown & Brown Insurance Co. of Pennsylvania*, 906 A.2d 571 (Pa. Super. 2006) to support its position that no relationship exists between Taxpayers and Keystone Realty. The *Wisniski* Court held that there are three categories of relationships: (1) an ordinary, arm's-length relationship; (2) an agency relationship; and (3) a confidential relationship. *Id.* The District maintains that because the contract between UMASD and Keystone Realty does not contain any obligation on the part of Keystone Realty to Taxpayers, none of the three categories exists.

In regard to the second duty factor, Taxpayers argue that because Keystone Realty acted in its own self-interest, i.e., maximizing its contingency fee, there can be no social utility in selecting Taxpayers' properties. The District, however, avers that the social utility in Keystone Realty assisting UMASD to increase revenue serves a legitimate government interest. "Regarding the third factor, duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others." *R.W. v. Manzek*, 888 A.2d 740, 747 (Pa. 2005). Taxpayers argue that since Keystone Realty targeted their properties in violation of the Uniformity Clause, Keystone Realty should have foreseen the harm to Taxpayers' constitutional rights. The District retorts that Keystone Realty's actions did not create an unreasonable risk of harm to others because it was merely consulting with UMASD regarding the property assessment appeals.

15

The fourth duty factor weighs the consequence of imposing such a duty upon the actor. Taxpayers argue that imposing a duty on Keystone Realty to make only lawful recommendations has only positive consequences. The District maintains that imposing a duty on Keystone Realty to all taxpayers would be absurd, as it would prohibit UMASD from consulting with Keystone Realty, thus, preventing UMASD from participating in the permissible practice of appealing from assessments. Finally, Taxpayers argue that imposing a duty on Keystone Realty would promote the overall public interest, while the District counters it would not be in the public interest to prevent UMASD from engaging in a process expressly permitted by both statute and case law.

The trial court found Keystone Realty owed no duty to Taxpayers because "[t]here was no relationship between the parties whatsoever. [Taxpayers] and Keystone [Realty] are not contracting parties. The agreement between UMASD and Keystone [Realty] does not contain any obligation on the part of Keystone [Realty] to [Taxpayers]." Trial Ct. Op. at 8. Based on the three categories of relationships espoused in *Wisniski*, we agree. Moreover, we hold that the remaining factors established in *Althaus* weigh in Keystone Realty's favor. There is a social utility in Keystone Realty's assistance to UMASD to increase revenue that serves a legitimate government interest. The mere consultation with a school district does not create an unreasonable risk of harm to others. Imposing a duty on Keystone Realty to all taxpayers would prohibit UMASD from consulting with Keystone Realty, thus, preventing UMASD from participating in the practice of filing assessment appeals. Finally, it would not be in the public interest to bar UMASD from engaging in a process expressly permitted by statute and case law. Accordingly, the trial court properly dismissed Taxpayers' negligence claim on the basis that Keystone Realty did not owe Taxpayers a duty of care.

16

### Economic Loss Doctrine

Taxpayers argue that assuming Keystone Realty did owe Taxpayers a duty of care, the trial court erred in dismissing their negligence claim on the basis of the economic loss doctrine. Specifically, Taxpayers contend that the trial court erred in ruling that Taxpayers failed to allege that Keystone Realty caused Taxpayers any injury, *i.e.*, Taxpayers did not allege any property damage or personal injury. Keystone Realty rejoins that since the only potential losses are economic due to the possible increased assessments, the trial court properly considered the economic loss doctrine.

"The economic loss doctrine provides, 'no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage.' *Adams v. Copper Beach Townhome C[mtys.], L.P.,* 816 A.2d 301, 305 (Pa.[]Super.[]2003)." *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 841 n.3 (Pa. 2009). Despite Taxpayers claim that they suffered the loss of their constitutional rights and that they had to defend against the assessment appeals to the Board and the trial court, we hold that the trial court properly dismissed Taxpayers' negligence claim for failure to allege a proper injury.[7]

### Conclusion

Because Taxpayers' Complaint fails to state a claim for which relief can be granted, we hold that the trial court properly sustained the District's preliminary objections and dismissed the Complaint.

---

[7] The District adds a final argument in the event this Court finds that Keystone Realty owed Taxpayers a duty of care. The District claims that under the gist of the action doctrine, a party cannot base an action in tort on actions that arose in the course of the parties' contractual relationship. *See Bruno v. Erie Ins. Co.,* 106 A.3d 48 (Pa. 2014). Because there was no contract between Taxpayers and Keystone Realty, we hold that the gist of the action doctrine does not apply.

For all of the above reasons, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge

<u>IN THE COMMONWEALTH COURT OF PENNSYLVANIA</u>

Valley Forge Towers Apartments N, :
LP; Morgan Properties Abrams Run :
Owner LP; KBF Associates, LP; Gulph :
Mills Village Apartments LP; and :
The Lafayette at Valley Forge LP, :
      Appellants :
          :
   v.     :
          :
Upper Merion Area School District :  No. 1960 C.D. 2014
and Keystone Realty Advisors, LLC :

## O R D E R

   AND NOW, this 10th day of September, 2015, the Montgomery County Common Pleas Court's October 9, 2014 order is affirmed.


        _____
        ANNE E. COVEY, Judge